**D. J. MUNCY, Jr., Appellant,**

v.

**MAGNOLIA CHEMICAL COMPANY,**
**Appellee.**

**No. 7888.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 16, 1968.

Rehearing Denied Jan. 20, 1969.

Monning & Monning and Robert R. Bradshaw, Amarillo, for appellant.

Simpson, Adkins, Fullingim & Hankins, and Jewett E. Huff, Amarillo, for appellee.

DENTON, Chief Justice.

D. J. Muncy, Jr. brought this suit against Magnolia Chemical Company, Vermal Rentfro and Curtis Cook, for damages resulting from alleged contact with Magna-Tox Super, an insecticide manufactured by Magnolia. Defendants Rentfro and Cook were dismissed on motion of the plaintiff. After the plaintiff rested his case, the trial court sustained a motion by Magnolia for an instructed verdict and entered judgment that the plaintiff take nothing.

Muncy was employed by Rentfro at his cattle feedlot near Channing, Texas. On or about November 9, 1965, Muncy was moving cattle from the various pens in order for them to be sprayed for lice. He testified that as he opened the gate of one of the pens his legs were sprayed with the insecticide by Cook, a fellow employee of Rentfro. He described the spray as "more or less a stream" which struck him just below the knees. According to his testimony the spray saturated his lower trousers and got inside his boots. He testified he then went to his employer and "asked him about what it would do * * * showed him where I had been sprayed". He received no response from Rentfro who was "just busy and walked away". Rentfro did not remember the incident. Muncy did not mention the spraying to Cook, but he testified he mentioned it to

one or two of the other employees in the vicinity. None of them offered any advice as to what to do. He worked the remainder of the day and took a bath that night after work, when he noticed his legs "stinging a little bit, that is all". Some three or four days later a rash appeared on his lower legs. A home remedy seemed to help but two or three weeks later it became worse. Medical treatment helped, but it became worse and the rash later spread to his hands, feet, shoulders and back. In July of 1966 Muncy began receiving treatment from Dr. Fred Johnson, a dermatologist in Amarillo. This treatment resulted in some improvement, but the rash apparently "comes and goes" from time to time.

The plaintiff's cause of action is based upon breach of implied warranty and negligence. The asserted cause of action based on negligence is alleged in the following respects: (1) in failing to place a warning on the product which constitutes negligence per se; (2) in failing to provide an adequate warning on the product. The thrust of plaintiff's contention is that the warning on the defendant's product did not comply with the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C.A., Section 135–135k; 7 Code of Federal Regulations, Section 362.116; and the Texas Insecticide, Fungicide and Rodenticide Act, Article 135b–5, Vernon's Ann.Civ.St.

■ As a general rule, a manufacturer and seller of a product which, to his actual or constructive knowledge, involves danger to users, has a duty to give a warning of such danger. 76 A.L.R.2d, pp. 16 and the numerous cases cited. Section 402A, Restatement of the Law, Torts 2d, Comment j, provides:

"In order to prevent the product from being unreasonably dangerous, the seller may be required to give direction or warning on the container, as to its use."

The first question to be determined is whether or not appellee owed a duty to users of the danger involved in the use of its product.

■ The defendant registered the product "Magna-Tox Super" with the United States Department of Agriculture as an economic poison, and with the Texas Department of Agriculture annually, as required by the respective statutes and regulations. The only evidence relating to the ingredients of Magna-Tox Super is a label introduced into evidence, said to be identical to that appearing on the can used by Rentfro. The label also contained other information such as directions for use, which is not material here. There was no evidence of an analysis of the product or tests which had been conducted. We therefore must assume the product contained the ingredients and the proportions as stated on the label.

■ The term "economic poison" is defined by 7 U.S.C.A., Section 135(a), as:

"* * * any substance or mixture of substances intended for preventing, destroying, repelling or mitigating any insects, rodents, nematodes, fungi, weeds, and other forms of plant or animal life or viruses * * *"

We are of the view there was a duty on the part of Magnolia to warn users of this inherently dangerous product. It was admittedly a toxic or poisonous product manufactured for the purpose of killing livestock pests. The label contained a warning, however the question is whether or not such warning was adequate as required by both the federal and state statutes and regulations as well as the common law duty to warn.

■ Section 362.116, C.F.R. sets out the acceptable requirements with respect to warning, caution and antidote statements

required to appear on labels of economic poisons. These requirements depend upon the extent of the toxicity of the product. The higher the toxicity, the more pronounced the warning must be, such as, the use of the skull and crossbones and the word "poison" in red on a contrasting background, and an antidote statement for those products highly toxic. Although the exact wording used in the suggested label statements is not essential, the substance is required.

Section 362.116d sets out the acceptable warnings, caution and antidote statements for economic poisons containing specified ingredients. The pertinent parts of 362.-116(d) which are applicable here read as follows:

"Benzene Hexachloride (Hexachlorocyclo-Hexane) B.H.C."

"(ii) Dry formulations below 25%.
Caution: May be absorbed through the skin. Avoid prolonged breathing of dust or spray mist. Avoid contact with skin and eyes. Wash thoroughly after handling. Avoid contamination of feed and foodstuffs.

* * * * * * * * * * *

"Toxaphene (chlorinated camphene containing 67 to 69% chlorine)—(i) Dry formulations 25% and above.

Warning: May Be Fatal If Swallowed! Do not breathe dust or spray mist. Do not get in eyes, on skin or on clothing. Wash thoroughly after using. Do not store near feed and food products. To protect fish and wildlife, do not contaminate streams, lakes, or ponds with this material.

(ii) Dry formulations below 25%.
Caution: Harmful if Swallowed! Avoid prolonged breathing of dust or spray mist. Avoid contact with eyes, skin and clothing. Wash thoroughly after using. Avoid storage near feed and food products. To protect fish and wildlife, do not contaminate streams, lakes, or ponds with this material.

(iii) Self-propelled sprays.
Caution: Do not spray on skin, or animals. Wash with soap and water after using. Avoid inhalation of mist. Avoid contamination of feed and foodstuffs. Remove birds, pets, and fish bowls from rooms being sprayed. Keep out of reach of children."

We find nothing in the Federal regulations in reference to Xylene or Methylated Napthalene. The active ingredients contained in Magna-Tox Super, according to its label were:

"ACTIVE INGREDIENTS:

Toxaphene—Technical Chlorinated Camphene _____45.00%
(Chlorine Content 67–69%)
Gamma Isomer of Benzene Hexachloride _____ 1.94%
Other Isomers of Benzene Hexachloride _____ 2.68%
Methylated Napthalene _____10.00%
Xylene _____22.50%
INERT INGREDIENTS: _____17.88%"

The corresponding statement appearing on the labels of Magnolia's product reads as follows:

"WARNING:

DO NOT USE MAGNA–TOX SUPER ON DAIRY ANIMALS. DO NOT USE MAGNA–TOX SUPER IN DAIRY BARNS. Do not dip your calves under the age of six months. If treatment of young animals is necessary spraying is recommended. Concentrations of MAGNA–TOX SUPER greater than those recommended should never be used. MAGNA–TOX SUPER is toxic and is absorbed through the skin in dry form and from solutions. Avoid inhaling mists from sprays and getting in the eyes. Use respirator or goggles for protection if necessary. Avoid unnecessary skin contact. Keep away from food and from food products. Keep clothing free from residue. Do not use on dogs. To protect fish and wildlife, do not contaminate streams, lakes or ponds with this spray or washings from the spray tank.

ANTIDOTE—EXTERNAL—Wash with plenty of soap and water.

HUMAN INTERNAL—Give sodium chloride 15 grams (1 tablespoonful of salt) in a glass of water. Repeat until vomit is clear. Call a doctor immediately."

---

There is no testimony, expert or otherwise, classifying or analyzing the ingredients contained in Magna-Tox Super. The extent of its toxicity is not shown.

■ Appellant takes the position Magnolia was negligent in the manner of warning in the following respects: (1) in failing to warn that in case of contact the affected area should be washed immediately with soap and water; (2) in failing to warn the user should not get Magna-Tox Super on his skin and clothing; and (3) the failure to warn that a user should wash thoroughly immediately after using the product. We do not think the warning appearing on the label was in compliance with the statutes and regulations as a matter of law. The word "warning" appeared in bold letters preceding the cautionary statement; it declared the product "toxic" and stated "it is absorbed through the skin in dry form and from solutions". It cautioned to "avoid inhaling mists from sprays and getting it in the eyes" and "avoid unnecessary skin contact" and directed "keep clothing free from residue". However, we believe the adequacy of the

warning is a question of fact. The statutes and regulations set minimum standards for those marketing economic poisons. A failure to comply would constitute negligence per se, however mere compliance does not mean the manufacturer or seller is free from negligence as a matter of law. Rumsey v. Freeway Manor Minimax (Tex.Civ. App.) 423 S.W.2d 387. In reviewing the evidence most favorably to the appellant, we conclude the sufficiency of the warning was a question of fact. Spruill v. Boyle-Midway, Inc. (4th Cir.) 308 F.2d 79; Charles Pfizer & Company v. Branch (Tex. Civ.App.) 365 S.W.2d 832 (Dismissed); McClanahan v. California Spray-Chemical Corporation, 194 Va. 842, 75 S.E.2d 712.

■ Appellee further contends, that assuming the label was not adequate; neither Muncy or Rentfro read the label containing the warning. The court in Spruill v. Boyle-Midway, Inc., supra, overruled this same contention and held a manufacturer of a dangerous product could not avoid liability for injury caused by the product where the warning was insufficient, although the user admitted he had not read

the label.   See also Charleṣ Pfizer & Company v. Branch, supra.

■ In view of another trial, we are of the opinion there could be no recovery under this record on the basis of implied warranty.   Magna-Tox Super was toxic and was knowingly purchased as such for the purpose of using it as an insecticide to kill lice.   There is no evidence the product was defective or that it was not fit for the purpose for which it was sold.

We are of the opinion the trial court erroneously instructed a verdict for the defendant because the sufficiency of the warning was a question of fact to be determined by the tryer of the facts.   In view of the disposition of the case, it is not deemed necessary to pass on other points of error presented here.

The judgment of the trial court is reversed and remanded for a retrial.