**W. J. ROSS, Individually and as Next Friend for Joe Mark Ross, a minor, Appellant,**

v.

**UP–RIGHT, INC., Appellee.**

No. 24921.

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1968.

Rehearing Denied March 19, 1969.

Philip S. Kouri, Jack G. Banner, Wichita Falls, Tex., for appellant.

Larry Lambert, Wichita Falls, Tex., for appellee.

Before JOHN R. BROWN, Chief Judge, WISDOM, Circuit Judge, and BREWSTER, District Judge.

WISDOM, Circuit Judge:

In this products liability case the plaintiff [1] sued Up-Right, Inc., manu-

---

1. The plaintiff in this action is W. J. Ross, father of Joe Mark Ross, who was injured in the accident in issue.  W. J. Ross is suing individually and as next of friend for his son.

facturer of a combination scaffold and ladder called the "Tallescope", for damages sustained when a Tallescope overturned, plummeting Joe Mark Ross to the floor. Up-Right describes the ladder as a "telescoping aluminum work platform for over-head spot maintenance", such as replacing a light bulb in a high ceiling. Ross sued on theories of breach of implied warranty, negligence, and res ipsa loquitur. Based on a jury verdict answering special issues in favor of the defendant, the district court rendered judgment for Up-Right. Ross appeals. We affirm.

On October 7, 1966, Wichita Falls High School had played a football game. A pep-rally before the game and a dance after the game were held in the school gymnasium. Ross had played in the school band that night. The next morning he and three of his classmates went to the gym to pick up musical instruments that they had left there the evening before. While there the boys began to take down posters, streamers, and decorations attached to the walls and rafters of the gym.

At one end of the gym stood the Tallescope, purchased some six years earlier by the Wichita Falls School System. The Tallescope platform may be extended up to nineteen feet; it may be folded, however, to a height of only six feet. It is on casters so that it may be rolled from room to room and through doorways. When put to use, its side braces (termed outriggers) are swung out from each side and locked in place by hand. The Tallescope in question had been used to put up the decorations in the gym on the day before, and was against a wall with one outrigger down so that the ladder could be pushed close to the wall. One of the boys pulled the ladder away from the wall, put the outrigger down, and apparently locked it.

After removing posters from the basketball backboard the four boys rolled the Tallescope across the gym floor. Joe Mark Ross climbed up to the platform and into the "birdsnest"; another boy climbed half-way up the ladder. Two of the four casters on the base of the Tallescope were then locked by one boy. The two boys on the ground then began to push the ladder, when it tipped, and fell. Ross was hurled headlong onto the gym floor and suffered severe injuries, resulting in brain damage and partial paralysis.

On appeal, Ross relies on four alleged errors in the trial below: (1) that the court did not properly submit to the jury the theory of breach of warranty; (2) that the court did not properly submit the issue of Up-Right's failure to provide adequate directions or instructions on the use of the ladder; (3) that the court failed to submit the theory of res ipsa loquitur; and (4) that the court improperly submitted the issue on assumption of risk. Texas law controls this case. Considering the appellant's contentions in light of the relevant case law, we find no reversible error in the court below.

## I.

### BREACH OF WARRANTY

A. The district court gave the following instructions and submitted the following special issues relating to the plaintiffs' breach-of-implied-warranty theory:

> You are further instructed that the manufacturer of a product may be liable to one injured while using the product, even in the absence of negligence, if the product is not suitable and reasonably fit to be used for the purpose for which it was manufactured, and such condition is proximate cause of an injury to a person using same.

> The manufacturer, however, would not be liable to one injured while using said product, if the user of same was negligent in the manner in which such person used the product or was negligent in failing to follow instructions for its use.

Special Issue No. 1:

> Do you find from a preponderance of the evidence that the ladder in question manufactured by Up-Right, Inc.

was not suitable and reasonably fit to be used for the purpose for which it was manufactured?

Answer: "It was not suitable and reasonably fit" or "It was suitable and reasonably fit."

Ross tendered a charge on implied warranty, but although the court permitted him to make unlimited objections to the charge on two separate occasions before the verdict, Ross made no objection to the instruction or issues. Absent plain error, Fed.R.Civ.P. 51 applies.[2] This rule, in part states:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the ground of his objection.

B. We find in this case "no plain error resulting in a miscarriage of justice". Haugh v. Curlee, 5 Cir. 1959, 265 F.2d 130.[3]

The defects in the charge quoted above, Ross argues, lie in (1) the court's use of the permissive words "may be" instead of the definitive "is" relating to a manufacturer's liability; (2) the omission of any consideration of a defect in the product; (3) the failure to specify safe use as the basis of the warranty doctrine; and (4) the failure to instruct the jury to consider the age, knowledge, and experience of the user. In addition, Ross objects to the contributory negligence instruction given by the court.

1. The Texas Supreme Court, in McKisson v. Sales Affiliates, Inc., Tex.1967, 416 S.W.2d 787, approved section 402A of the American Law Institute Restatement of Torts (Second): "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user. * * *" As Comment *a* reiterates, this rule makes the manufacturer *subject to* liability. Texas courts,[4] our courts,[5] and commentators [6] have long repeated that a manufacturer is not an insurer; an instruction specifying that the manufacturer "may be" liable to a user in such circumstances as the rule covers, therefore, is proper. See Olsen v. Royal Metals Corp., 5 Cir. 1968, 392 F.2d 116, 118: "Under this [strict liability] doctrine the seller may be liable to a user * * *."

Section 402A of the Restatement sets forth two requirements for liability of a manufacturer: that the product be "in a defective condition" and that it be "unreasonably dangerous". "Demanding that the defect render the product unreasonably dangerous reflects a realization that many products * * * have both utility and danger." Helene Curtis Indus., Inc. v. Pruitt, 5 Cir. 1968, 385 F.2d 841, 850. The alleged defect in this case, as in *Pruitt*,[7] is not an unintended feature of the product (resulting from a miscarriage in the manufacturing process) but a matter of design. "The product was exactly as intended and yet harm still occurred." *Pruitt*, supra at

2. E. g., Cockrell v. Ferrier, 5 Cir. 1967, 375 F.2d 889; Garrett v. Campbell, 5 Cir. 1966, 360 F.2d 382; Burns v. Travelers Ins. Co., 5 Cir. 1965, 344 F.2d 70; Wirtz v. International Harvester Co., 5 Cir. 1964, 311 F.2d 462; Williams v. National Surety Corp., 5 Cir. 1958, 257 F.2d 771.

3. Accord: Sadacca v. Nylonet Corp., 5 Cir. 1958, 254 F.2d 238; Dowell, Inc. v. Jowers, 5 Cir. 1948, 166 F.2d 214.

4. E. g., Shamrock Fuel & Oil Sales Co. v. Tunks, Tex.1967, 416 S.W.2d 779, 785.

5. E. g., Helene Curtis Indus., Inc. v. Pruitt, 5 Cir. 1968, 385 F.2d 841, 849.

6. E. g., Freedman, "Defect" in the Products: The Necessary Basis for Products Liability, in Tort and in Warranty, 33 Tenn.L.Rev. 323 (1966); Traynor, The Ways and Meaning of Defective Products and Strict Liability, 32 Tenn.L.Rev. 363 (1965).

7. In *Pruitt* the product alleged to have been "defective" was a cosmetic hair bleach, the use of which resulted in severe burns to the plaintiff in that case.

850. Ross's claim, simply stated, is that the Tallescope is defective in design in that it may fall over too easily, either because the outriggers may easily be left unlocked or because the ladder unit has too small a base to support its height. When, as in this case, the product is exactly as intended by the manufacturer, to speak in terms of "defect" only causes confusion. As Dean John Wade points out:

> Perhaps it can be said to be improperly designed, and the bad design may be called a defect. But then the design is "defective" only because it made the product unreasonably dangerous. * * * In cases of this general type the phrase "defective condition" has no independent meaning, and the attempt to use it is apt to prove misleading. The only real problem is whether the product is "unreasonably dangerous," because "defective condition," if it is to be applied at all, depends on that. Strict liability is appropriate for these cases, and it would be better in them not to refer to any requirement of defectiveness. * * * Thus, the test for imposing strict liability is whether the product was unreasonably dangerous. * * * Wade, strict tort liability of manufacturers, 19 SW.L.J. 5, 15 (1965).

See also Green v. American Tobacco Co., 5 Cir. 1968, 391 F.2d 97 at 110, rehearing en banc granted. In *Green* the Court stated: "Inability to prove a specific defect would not preclude liability if there was proof the product was unreasonably dangerous without a defect". The court did not err in omitting any reference to a defect or defective condition.

■ 3. The key, then, is whether the product is "unreasonably dangerous". The district court did not use those words; the court, instead, used the term "not suitable and reasonably fit". Although this term does not conform to the Restatement language, it is similar to the wording in the Uniform Commercial Code, § 2–314, with respect to the implied warranty of merchantability ("suitably and reasonably fit"). Courts have often used the term. See, e. g., Morrow v. Calorie Appliance Corp., Mo.1963, 372 S.W.2d 41, 55; Courtois v. General Motors Corp., 1962, 37 N.J. 525, 534, 182 A.2d 545. The findings of the trial court in *McKisson* specified that the "preparation was not reasonably fit for the use * * *." 416 S.W.2d at 792. Indeed, the phrase "not suitable and reasonably fit" standard is more favorable to the plaintiff's case than would have been one employing the "unreasonably safe" test. A product could be not suitable and reasonably fit for some purpose, and yet be only slightly dangerous (i. e. not unreasonably so); however, any unreasonably dangerous product would, in all circumstances, be unsuitable for use by the intended user.

4. Ross contends that the court erred in not instructing the jury to consider the age, knowledge, and experience of the persons who would be likely to use the product. However, Ross again failed to request the court to instruct the jury on this point. The contention is addressed to the foreseeability as an aspect of proximate cause. The court instructed the jury on proximate cause. The contention raises indirectly the question whether Ross was using the ladder in accordance with the intended use of the ladder. On this question the charge was favorable to the plaintiff; for the evidence is undisputed that Ross was using the ladder contrary to school rules and ordinary school procedures.

5. In conjunction with the instruction on contributory negligence, the court submitted special issues on whether Ross had been negligent in his use of the Tallescope. In Shamrock Fuel & Oil Sales Co. v. Tunks, Tex.1967, 416 S.W.2d 779, and in *McKisson,* the Supreme Court of Texas wrote at length regarding the nature and scope of the contributory negligence defense in strict liability cases. This Court analyzed those cases in our recent decision in McDevitt v. Standard Oil Co. of Texas,

5 Cir. 1968, 391 F.2d 364, 369, and concluded:

It is evident from these two decisions that the Supreme Court of Texas did not decide that contributory negligence is never a defense to a strict liability action, but limited its holding to the principle that one who is contributorily negligent in failing to discover a defect in a product is not barred from recovery. The question of whether that species of contributory negligence variously referred to as "misuse", "improper use", "voluntarily proceeding to encounter a known risk" or any other of the myriad synonyms used by various courts and writers constitute defensive matter to such an action was expressly left open.

Since the jury did not find Up-Right negligent, it did not answer the issues concerning Ross's negligence.

## II.

### FAILURE TO INCLUDE ADEQUATE AND SUFFICIENT INSTRUCTIONS

■ Ross correctly states the law in his brief: in informing the public as to proper use of a product, there is a distinction between warnings and instructions; the manufacturer of a product has a nondelegable duty to furnish adequate instructions as to the safe use of its product. See generally *Pruitt*, supra, 385 F.2d at 860; Dillard & Hart, Products Liability: Directions for Use and the Duty to Warn, 41 Va.L.Rev. 145 (1955). The district court submitted the issue whether Up-Right was negligent "in failing to give adequate warning of the use of the ladder to prospective users". The jury answered this issue in the negative.

■ The issue whether Up-Right failed to give adequate and sufficient instructions to prospective users of the Tallescope was raised by the evidence. But Ross, while requesting a jury instruction regarding this issue, did not request a special issue on it and did not object to the court's failure to submit such an issue or instruction. Under Rule 51, again, Ross cannot complain now of this failure as error. We have examined the record and instructions for the use of the Tallescope—one set boldly marked on the ladder itself and another more complete set accompanying the ladder when sold—and we find no plain error, no reversible error, on this point.

## III.

### RES IPSA LOQUITUR

■ Ross did not object to the district court's not charging on the theory of res ipsa loquitur. Such an objection however would have been futile. That theory, under any of its formulations, is not applicable to the present case. The plaintiffs' experts pointed out no specific defect in the ladder; the ladder had been in use and out of the defendant's control for over six years; the instructions regarding preparation of the ladder for use may not have been followed by the boys on the date of the accident; and there was evidence that the two boys at the base of the ladder pushed on it immediately before it fell. See *Pruitt*, supra at 853–854; Patrol Valve Co. v. Farrell, Tex.Civ.App.1958, 316 S.W.2d 92, writ ref'd n. r. e.; P. Keeton, Products Liability—Problems Pertaining to Proof of Negligence, 19 Sw.L.J. 26, 35 (1965).

## IV.

### ASSUMPTION OF RISK

■ The district court submitted the following issue on assumption of risk. Special Issue No. 6–B:

Do you find from a preponderance of the evidence that at the time and on the occasion in question, the condition of the ladder in question was not open and obvious to Joe Ross just before the occasion in question?

You are instructed that a condition is open and obvious to a person if such person knows or in the exercise

or ordinary care, considering the age, experience, intelligence and ability to understand the character of the act or of the omission, *should know* of it, and if such person also appreciates or in the exercise of ordinary prudence should appreciate the full extent of the danger involved in its use.

You are also instructed that Joe Ross was under no duty to make an inspection of the ladder, in question, for defects. He could not close his eyes to obvious dangers or to dangers that he knew of, but he had a right to assume that the ladder was safe for his use, if he followed instructions unless he knew of such danger or unless the danger was open and obvious.

Answer "It was not open and obvious" or "It was open and obvious". (Emphasis added.)

The "should know" portion of the instruction is contrary to the Texas law as set out in Halepeska v. Callihan Interests, Inc., Tex.1963, 371 S.W.2d 368. See generally Greenhill, Assumed Risk, 20 Sw.L.J. 1 (1966); Greenhill, Assumption of Risk, 16 Baylor L.Rev. 111 (1964). Moreover, this formulation of the issue combines the assumed-risk theory with the open-and-obvious theory, often considered separate legal doctrines.[8] See R. Keeton, Assumption of Product Risks, 19 Sw.L.J. 61, 66

(1965). Under the assumed-risk theory an affirmative defense—the plaintiff cannot recover if he (1) had knowledge of the danger, (2) appreciated the nature of the danger, and (3) voluntarily exposed himself to it. The open-and-obvious (no-duty) theory places the burden on the plaintiff to "negative no duty" and involves the simple motion that the defendant owes no duty to the plaintiff if the danger was open and obvious. This latter theory is limited in Texas to cases involving liability of occupiers of premises to invitees. Halepeska v. Callihan Interests, Inc., supra; J. & W. Corp. v. Ball, Tex., 1967, 414 S.W.2d 143.

This issue as submitted, erroneous as it may be, cannot form the basis of a reversal of the judgment below. The jury independently found Up-Right not to be negligent and the Tallescope ladder to be suitable and reasonably fit for use. The res ipsa loquitur doctrine was, correctly, not submitted to the jury. Thus Ross has established no affirmative ground for recovery and special issue 6B becomes immaterial. Even if incorrectly submitted, therefore, it does not become grounds for reversible error. See American Mutual Liability Ins. Co. v. Parker, 1946, 144 Tex. 453, 191 S.W.2d 844; Martin v. Gurinsky Cattle Market, Tex.Civ.App.1964, 377 S.W.2d 710, writ ref'd n. r. e.[9]

Affirmed.

8. On assumed risk and open and obvious dangers in products liability cases see also Dillard & Hart, Product Liability; Directions for Use and the Duty To Warn, 41 Va.L.Rev. 145, 163 (1955); P. Keeton, Products Liability—Current Developments, 40 Texas L.Rev. 193, 194 (1961). And see the Restatement Second, Torts § 496A-G.

9. "Since the jury having found that appellee Rodriguez was not guilty of any act of negligence, there is no theory on which appellant could rely to have a verdict rendered to support a judgment in his behalf and the answer to special issue No. 15 * * * becomes immaterial and harmless, even if the same might be error, a jury finding on an immaterial issue may be disregarded." 377 S.W.2d at 714.