**BITUMINOUS CASUALTY CORPORATION, Appellant,**

v.

**BLACK AND DECKER MANUFACTURING CO., Appellee.**

No. 18404.

Court of Civil Appeals of Texas, Dallas.

Nov. 27, 1974.

Rehearing Denied Dec. 30, 1974.

Henry Stollenwerck, Dallas, for appellant.

J. Carlisle DeHay, Jr., Paul L. Smith, Gardere, Porter & DeHay, J. S. Maxwell, Seay, Gwinn, Crawford & Mebus, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

This is a products liability action. Martin O'Shea sued Black and Decker Manufacturing Company (Black and Decker), seeking damages for personal injuries received by him when a grinding wheel sold by Black and Decker flew apart while being used by O'Shea. Bituminous Casualty Corporation (Bituminous), having paid O'Shea workmen's compensation insurance, intervened as a plaintiff asserting its subrogation rights. Black and Decker joined Carborundum Company (Carborundum), as a third party defendant. Prior to announcement for trial O'Shea elected not to prosecute his cause of action and was granted a nonsuit. Bituminous was permitted to proceed as the sole plaintiff seeking to recover the amount of workmen's compensation insurance paid to O'Shea as a result of his injuries. Based upon the verdict of the jury, the trial court rendered a take-nothing judgment against Bituminous and denied Black and Decker recovery against Carborundum. Bituminous appeals from that judgment as to Black and Decker. No one complains on appeal con-

cerning the judgment in favor of Carborundum.

In its first point of error appellant contends that the court erred in not granting it a judgment on the verdict of the jury. We overrule this point. To establish the validity of this point it is incumbent upon appellant to demonstrate that under any possible legal theory the verdict of the jury, when viewed as a whole, must support a judgment for appellant and not the judgment rendered by the trial court.

O'Shea (and the intervenor Bituminous) based his cause of action against Black and Decker on the doctrine of strict liability in that Black and Decker had placed on the market a grinding wheel which was unreasonably dangerous and was known to be unreasonably dangerous to the public when it left the hands of Black and Decker. It was contended that Black and Decker failed to warn O'Shea of the dangers involved in using the grinding wheel. In response to plaintiff's cause of action Black and Decker alleged that O'Shea failed to exercise ordinary care by misusing the grinding wheel and failed to heed the warning concerning the use of a safety guard, all of which proximately caused or contributed to cause the accident and damages complained of by plaintiff.

In answer to special issues four and five the jury found that the grinding wheel in question was unreasonably dangerous at the time it left the hands of Black and Decker and that such dangerous condition was a producing cause of the injuries sustained by O'Shea.[1]

In special issue number nine the court inquired as to whether the grinding wheel "was misused" in any one or more of the following particulars: (1) improperly transporting; (2) improperly storing; and (3) improperly handling the grinder and cuprock. To each of these questions the

jury answered "Yes." In answer to special issue number ten the jury found that such misuse was a producing cause of the occurrence in question.

In answer to special issues seventeen and twenty the jury found that neither O'Shea nor his employer Carriker, improperly handled or stored the instrument.

In response to special issues twenty-four, twenty-five and twenty-six the jury found that O'Shea and Carriker did improperly transport the grinder and that such conduct was negligence but was not a proximate cause of the occurrence in question.

In answer to special issue number one the jury found that at the time the instrument was purchased by Carriker or O'Shea it had a label attached which said: "Use Safety Guard."

In response to special issue number eleven the jury found that the grinding wheel in question was used in "disregard of the warnings on the blotter" and that such was a producing cause of the occurrence in question.

Prior to the rendition of judgment, appellant Bituminous, failed to file a motion for judgment *non obstante veredicto* to request the court to set aside or disregard the answer of the jury to any of the special issues. It appears, therefore, from a reading of the entire verdict of the jury in this case that the trial court could not have rendered judgment for appellant Bituminous. This is especially true in view of the express finding of the jury on the defensive issues of misuse and failing to heed the warning concerning the use of the safety guard.

Because of the conflicting answers of the jury to the various questions submitted concerning the defense of misuse, which we will discuss at a later point in this opinion, we proceed to a consideration of

1. The jury also found in answer to special issues six and seven that the instrument in question was manufactured by Carborundum Company but was not in an unreasonably dangerous condition when it left the hands of that company.

what we deem to be the primary thrust of appellant's appeal contained in points four through seven inclusive. These points complain variously of the submission of special issue number eleven in which the court inquired generally whether the grinding wheel was used "in disregard of the warnings on the blotter?" Appellant complains (1) that such issue is global and does not limit the inquiry to O'Shea or Carriker; (2) that it assumes that there was an adequate warning on the blotter; and (3) that the statement "Use Safety Guard" is not a legally adequate warning. We sustain these contentions.

To place the question of adequate legal warning in its proper perspective and to resolve the question of correctness of the trial court's issue relative to warning, we must consider the factual background of the incident which led to O'Shea's injuries. The record reveals that in 1968 Carriker, O'Shea's employer, purchased a sander-grinder and a grinding wheel cuprock (used as a part of the sander-grinder) from Black and Decker in Dallas, Texas. Both Carriker and other employees, as well as O'Shea, had used the sander-grinder for various purposes prior to O'Shea's injuries on August 4, 1970. During this period Carriker purchased seven or eight new cuprocks to be used in connection with the grinder. According to witnesses for Black and Decker each cuprock sold by the company had a label or "blotter" attached that contained the following words: "Warning: Thread wheel on spindle by hand. Do not thread wheel by starting motor. Use safety guard. Maximum safe r. p. m.'s 6045." According to witnesses for Black and Decker the cuprock is an inherently dangerous product unless a safety guard is used to contain the pieces of the instrument if it breaks while in use. Black and Decker offered safety guards for sale but as a separate item from the cuprock itself. O'Shea and Carriker had never purchased a safety guard to be used on any of the cuprocks purchased by them. At the time of the injury O'Shea was using the sander-grinder

and its cuprock to smooth the edges of an automobile wheel. No safety guard was attached to the cuprock at that time.

Neither Carriker nor O'Shea testified that they had seen or read the words claimed by Black and Decker to be on the blotter of each cuprock sold. O'Shea testified that he had no recollection of ever having been given any kind of warning concerning the use of the sander-grinder or the cuprock.

 As enunciated in the Restatement (Second) of Torts § 402A (1965), one who sells a product in a defective condition unreasonably dangerous to the user "is subject to liability for physical harm thereby caused to the ultimate user." A product is unreasonably dangerous and, therefore, defective if the ordinary man knowing the risks and dangers involved in its use, would not have marketed the product without "supplying warnings as to the risks and dangers involved in using the product as well as instructions as to how to avoid those risks and dangers." Technical Chem. Co. v. Jacobs, 480 S.W.2d 602, 605 (Tex. 1972); Gravis v. Parke-Davis & Co., 502 S.W.2d 863, 868 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.); Muncy v. Magnolia Chem. Co., 437 S.W.2d 15, 17 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.); Proctor & Gamble Mfg. Co. v. Langley, 422 S.W.2d 773, 778 (Tex.Civ. App.—Dallas 1967, writ dism'd); Keeton, Products Liability—Inadequacy of Information, 48 Tex.L.Rev. 398, 403 (1970).

 The question of adequacy of warning in such a situation has been dealt with extensively by courts in Texas as well as in other jurisdictions. Muncy v. Magnolia Chemical Co., 437 S.W.2d 15 (Tex. Civ.App.—Amarillo 1968, writ ref'd n. r. e.). In Spruill v. Boyle-Midway, Inc., 308 F.2d 79, 85 (4th Cir. 1962) the court appropriately summarized the essential factors of a legally adequate warning by setting forth two essential characteristics: (1) it must be in such form that it could reasonably be expected to catch the attention of

the reasonably prudent man in the circumstances of its use; (2) the content of the warning must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person. *See also* Crane v. Sears, Roebuck & Co., 218 Cal.App.2d 855, 32 Cal.Rptr. 754, 757 (1963). As stated in Walton v. Sherwin-Williams Co., 191 F.2d 277, 286 (8th Cir. 1951) the question of whether or not a given warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon the mind of the average user of the product.

■ Implicit in the duty to warn is the duty to warn with a degree of intensity that would cause a reasonable man to exercise for his own safety the caution commensurate with the potential danger. Tampa Drug Co. v. Wait, 103 So.2d 603, 609 (Fla.1958); 75 A.L.R.2d 765. This is true because one who sells a product with a high risk of human harm such as a grinding wheel cuprock is legally obligated to provide specifications, instructions, and warnings so that it is reasonably safe for use by ordinary persons. Boyl v. California Chem. Co., 221 F.Supp. 669, 674 (D. Or.1963). A clear cautionary statement setting forth the exact nature of the dangers involved would be necessary to fully protect the seller. Dillard and Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va.L.Rev. 145, 151 (1955).

■ Many courts draw a distinction between directions for use and legally sufficient warnings. It has been said that these terms serve distinctive purposes. Ross v. Up-Right, Inc., 402 F.2d 943 (5th Cir. 1968). If the statement "Use Safety Guard" was actually on the blotter in question, as found by the jury, it could be reasonably argued that such words could be considered merely as a direction for use rather than as a warning of the danger. In such a situation the duty to warn is not

necessarily satisfied. 1 L. Frumer & M. Friedman, Products Liability 186.1 (1973).

Illustrating the distinction between warnings and directions are such cases as J. C. Lewis Motor Co. v. Williams, 85 Ga. App. 538, 69 S.E.2d 816 (1952); Boyl v. California Chem. Co., 221 F.Supp. 669, 676, n. 6 (D.Or.1963); E. I. Du Pont De Nemours & Co. v. Baridon, 73 F.2d 26 (8th Cir. 1934); Ebers v. General Chemical Co., 310 Mich. 261, 17 N.W.2d 176 (1945).

The question of sufficiency of the warning or notice of danger has been held to be one for the trier of fact in a number of cases.

In Muncy v. Magnolia Chem. Co., 437 S.W.2d 15 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.), the plaintiff, an employee of a cattle feedlot company, sustained injury when his legs were accidentally sprayed with an insecticide, Magna-Tox Super, manufactured by the defendant. The insecticide was being applied to cattle when some of the spray saturated the plaintiff's trousers and got inside his boots. After working the remainder of the day, the plaintiff took a bath and noticed that his legs were stinging "a little bit." A rash developed on his lower legs three or four days later and then spread to other parts of his body. Medical treatment improved the condition but the rash often reappeared.

On the insecticide's label was the following warning in part:

WARNING:

MAGNA–TOX SUPER is toxic and is absorbed through the skin. . . . Avoid unnecessary skin contact. . . . Keep clothing free from residue. . . .

ANTIDOTE – EXTERNAL — WASH with plenty of soap and water.

. . . . . .

Plaintiff alleged that the defendant was negligent in failing to adequately warn that the user should not get the insecticide

on his skin and clothing and that in the event of contact the affected area should be washed immediately with soap and water.

The Amarillo Court of Civil Appeals, speaking through Chief Justice Denton, found that the warning could not be declared adequate as a matter of law. The court held that the trial court erred in instructing a verdict for the defendant "because the sufficiency of the warning was a question of fact to be determined by the trier of the facts." *Id.* at 20. *See also* Technical Chem. Co. v. Jacobs, 480 S.W.2d 602 (Tex.1972).

The case of Maize v. Atlantic Refining Co., 352 Pa. 51, 41 A.2d 850 (1945) illustrates further that the adequacy of warning should be a jury question. In that case plaintiff's decedent was killed while cleaning a rug by inhaling fumes of a product called "Safety-Kleen." On the two sides of the can containing the cleaner a cautionary statement appeared: "Do not inhale fumes. Use only in a well-ventilated space." It was established that the deceased had been working in a room with all the windows and doors closed. The Pennsylvania Supreme Court stated that the question of the adequacy of the warning of the fluid's inherent danger was in the jury's province.

[I]t is clear that the court below could not declare as a matter of law that the defendant in displaying as it did the "cautionary" admonition on its can of Safety-Kleen discharged its full duty under the circumstances and was not guilty of negligence. *Id.* at 853.

In Williams v. Caterpillar Tractor Co., 149 So.2d 898 (Fla.Ct.App.1963) the plaintiff sued a bulldozer manufacturer for the death of her husband. The decedent was working as a mechanic on a caterpillar owned by his employer and the cause of death was excessive release of pressure from a hydraulic thread-adjuster which exploded a grease fitting into decedent's face.

On the access door to the thread-adjuster was affixed a sign which read:

Warning: High pressure cylinder. Do not open vent valve more than ½ turn or remove fitting until pressure is relieved.

Plaintiff contended that the warning sign was so placed, worded and designed that it would be inadequate to advise the decedent of the dangers involved. The Florida Appellate Court concluded that a question of fact should have been presented to the jury as to whether or not the warning sign was adequate to warn of potential danger inherent in the mechanism. It could not be said as a matter of law that the degree of warning was commensurate to the potential danger. *Id.* at 903.

To the same effect *see* Anderson v. Klix Chem. Co., 256 Or. 199, 472 P.2d 806 (Or.1970); Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla.1958); Reddick v. White Consolidated Industries, Inc., 295 F.Supp. 243, 246 (S.D.Ga.1968); McClanahan v. California Spray-Chem. Corp., 194 Va. 842, 75 S.E.2d 712 (1953); Miller v. Trindl Prod., Ltd., 38 A.D.2d 787, 328 N.Y.S.2d 12 (1972); Post v. American Cleaning Equip. Corp., 437 S.W.2d 516 (Ky.Ct.App.1968); Henry v. Crook, 202 App.Div. 19, 195 N.Y.S. 642 (1922); and Dillard and Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va.L.Rev. 145, 169 (1955).

The trial court, by submitting issue number eleven inquiring whether the grinding wheel was used assumed not only that warning was given "in disregard of the warning on the blotter" necessarily but that the warning was legally sufficient. In light of the authorities above cited we are convinced that the trial court was not justified in finding, as it did, that the warning was legally sufficient. Such question was appropriately one for the jury.

Accordingly, we hold (1) that the court erred in submitting special issue number

eleven in such a manner as to assume, as a matter of law, that an adequate legal warning was given; (2) that the question of whether the warning was given, and the sufficiency thereof, should have been submitted to the jury in separate special issues.

■ Appellant's complaint of the failure of the trial court to give a definition of the term "warning" is overruled for the simple reason that appellant did not comply with the express provisions of Texas Rules of Civil Procedure, rule 279, by requesting the definition in substantially correct wording. Great American Indem. Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312, 314 (1943).

■ Appellee contends that any error in the wording of issue number eleven is harmless because the judgment may be supported upon the defensive theory of misuse as found by the jury in special issue number nine. This contention is incorrect when we consider the verdict as a whole. Issue number nine is not confined to either Carriker or O'Shea. In answer to this issue the jury found that the wheel was misused in three different respects. The jury also found that such misuse was a producing cause of the occurrence in question. However, in other special issues the jury specifically found that neither O'Shea nor Carriker improperly misused the grinder except in transporting the same. Even in that instance however, such was found not to be a proximate cause of the occurrence in question. In this state of the record we cannot say that the judgment conformed to the verdict as required by Tex.R.Civ.P. 301.

■ Moreover, under the record made here issue number eleven was not a material issue. The accident in question occurred because the cuprock shattered and flew apart when the grinder was used without a safety guard. The evidence shows that the propensity to fly apart existed whether or not any misuse in trans-

porting, handling, or storing had occurred, and, consequently, that an adequate warning of this danger was necessary. The evidence further shows a strong probability that if adequate warning had been given and heeded, use of the safety guard would have contained the fragments of the cuprock and would have prevented the accident in question, whether or not any such misuse had occurred. If the injury resulting from the foreseeable misuse of the product is one of which an adequate warning would likely prevent, then such misuse is no defense to an action based on the failure to give such a warning. Spruill v. Boyle-Midway, Inc., 308 F.2d 79, 84–86 (4th Cir. 1962); Otis Elevator Co. v. Wood, 436 S.W.2d 324, 328 (Tex.1968); Haberly v. Reardon Co., 319 S.W.2d 859, 863 (Mo.1958); 1 L. Frumer & M. Friedman, Products Liability 186.6 (1973). The record shows that if the cuprock was not handled, stored, or transported properly the danger of its flying apart while in use was significantly increased and such misuse was clearly foreseeable. Consequently, to the extent that this cause of action is based on failure to give adequate warning, misuse in transportation, handling, and storage of the equipment would not be a defense.

■ Our Supreme Court, on November 20, 1974, in Henderson v. Ford Motor Co., —— S.W.2d —— (Tex., 1974) set at rest any question concerning the defense of contributory negligence in a strict liability action. The court holds such defense is not available in such cases in Texas.

For the reasons assigned the judgment of the trial court in favor of Black and Decker is reversed and remanded for new trial and that part of the judgment denying recovery from Carborundum is affirmed.

Reversed and remanded in part and affirmed in part.

## ON REHEARING

■ Appellee Black and Decker Manufacturing Co., in its motion for rehearing,

among other things, misconstrues the effect and meaning of the sentence appearing in our original opinion, as follows:

> If the injury resulting from the foreseeable misuse of the product is one which an adequate warning would likely prevent, then such misuse is no defense to an action based on the failure to give such a warning.

Appellee interprets this sentence to mean that the defense of misuse is not available when the cause of action is based on the failure to warn of that conduct alleged by a defendant as constituting misuse. When the sentence is read in connection with the preceding sentences in the same paragraph, it is obvious that we were dealing with the factual situation in this particular case. To avoid any misconception concerning the intent of the opinion we change the sentence to read as follows:

> If the injury resulting from the foreseeable misuse of the product is one which an adequate warning concerning use of a safety device would likely prevent, then such misuse is no defense to an action based on the failure to give such a warning.

With this modification the motion for rehearing is overruled.