**KEENE CORPORATION, Appellant,**

v.

**Robert C. BELFORD, Jr. and Anita Belford, Appellees.**

**No. 13–92–548–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 25, 1994.

James H. Powers, Gwendolyn Frost, Roberts, Markel, Folger & Powers, Houston, for appellant.

C. Andrew Waters, Janices Robinson, Brent M. Rosenthal, Baron & Budd, Dallas, for appellees.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr.

**Opinion**

FEDERICO G. HINOJOSA, Jr., Justice.

Keene Corporation ("Keene") appeals from a judgment rendered against it after a jury found that appellee's injuries were only caused by appellant. By a single point of error, appellant contends that this finding was against the great weight and preponderance of the evidence. We affirm the judgment of the trial court.

Robert C. Belford, Jr. ("Belford") worked as a boilermaker for approximately forty years. During 75 to 80 percent of that time, he worked alongside persons who installed asbestos-containing thermal insulation products that were very dusty and were manufactured by different companies. During 99 percent of the time, the persons installing these insulation products worked above him. Belford worked on a number of job sites, constantly exposed to asbestos-containing thermal insulation manufactured by Keene and/or its predecessors.[1] Belford was diag-

---

1. The jury was instructed that "Keene Corpora-   tion" included Keene Corporation, Keene Build-

nosed as having asbestosis in 1983. He retired in 1991 at the age of 65 years.

Belford sued Armstrong World Industries, Inc., Fibreboard Corp., GAF Corp., The Celotex Corp. (successor-in-interest to Philip Carey Manufacturing Corp.), Pittsburgh Corning Corp., Keene Corp., Nicolet, Inc., Owens–Illinois, Inc., Standard Insulations Inc., Combustion Engineering, Inc., Raymark Industries, Inc., and H.K. Porter Company, Inc., each individually and in its successor-in-interest capacity, along with Eagle–Picher Industries, Inc., Owens–Corning Fiberglass Corp., National Gypsum Company, and Ryder Industries, Inc. Proceedings against five of the defendants were stayed pursuant to 11 U.S.C. § 362(a).

Keene, together with Armstrong World Industries, Fibreboard Corp., Owens–Corning Fiberglass, and six other defendant manufacturers, filed cross-claims against GAF Corp. and the five remaining defendant manufacturers, seeking indemnity and contribution. Belford settled with all defendants, except Keene.

At trial, Belford and Keene stipulated that the insulation products manufactured by Keene[2] contained asbestos at the time that Belford was exposed to their dust, and that Belford was also exposed to asbestos-containing products manufactured by GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries.

The case was submitted to the jury on the theories of negligence, strict liability design defect, and strict liability marketing defect. The jury found that a defect existed in the marketing of the asbestos-containing products at the time they left Keene's possession. The jury found 1) that no defect existed in the marketing of the asbestos-containing products at the time they left the possession of GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries,[3] 2) that Keene was not negligent, and 3) that no design defect existed.

Keene does not attack the jury's finding that its products contained a marketing defect. Keene contends that since the evidence shows indivisible, cumulative exposure by Belford to all of the named companies' products, and since the cause of Belford's injuries cannot be attributed to any individual tortfeasor, all of the manufacturers listed in Jury Question No. 3 should be jointly and severally liable for Belford's injuries, and that there is "ample evidence" to support a finding against all of these manufacturers.

Keene relies primarily upon the holding of the U.S. Court of Appeals for the 5th Circuit in *Borel v. Fibreboard Paper Prod. Corp.*[4] Keene admits that "Keene had the burden of proving that Mr. Belford had been exposed to products other than products manufactured by" Keene and that the proper standard of review is "against the great weight and preponderance of the evidence."

ing Products Corporation, Baldwin–Ehret Hill Company, Baldwin–Hill Company, and Ehret Magnesia Manufacturing Company.

**2.** Keene manufactured Thermasil, Mono-block and Number One insulating cement.

**3.** The jury answered Question No. 3 as follows:
  **Question No. 3:** Was there a defect in the marketing of the asbestos-containing products at the time they left the possession of any of the following companies, Keene Corporation, GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco and Armstrong World Industries, Inc., that was a producing cause of the asbestos-related injury, if any, of Robert Belford?
  [Definitions of "marketing defect," "warnings," and "unreasonably dangerous" are omitted.]

Answer "Yes" or "No" for each of the following:

| | |
|---|---|
| Keene Corporation | Yes |
| GAF/Ruberoid | No |
| Owens–Corning Fiberglass/Kaylo | No |
| Fibreboard Corporation/Pabco | No |
| Armstrong World Industries | No |

Question No. 5 asked the jury to apportion percentages of causation *only* if it found that more than one of the companies' acts, omissions, or products caused injury to Belford.

**4.** 493 F.2d 1076, 1095 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

Belford contends that Keene raises an argument virtually identical to that raised in *Fibreboard Corp. v. Pool*,[5] and that Keene failed to meet its burden "to establish that the non-party manufacturers' conduct was a proximate cause of plaintiff's injury by establishing the manufacturers' negligence or a design or marketing defect contained in their products."

■ When a party with the burden of proof complains on appeal from an adverse jury finding, the appropriate points of error are "that the matter was established as a matter of law" or "that the jury's finding was against the great weight and preponderance of the evidence." *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). When we review a factual sufficiency point "that the jury's finding was against the great weight and preponderance of the evidence," we examine the entire record. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Hickey v. Couchman*, 797 S.W.2d 103, 110 (Tex.App.—Corpus Christi 1990). We set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain*, 709 S.W.2d at 176; *Hickey*, 797 S.W.2d at 110.

■ The parties stipulated that Belford was exposed to asbestos-containing products manufactured by Keene, GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries. However, in a marketing defect case against a manufacturer of asbestos-containing products, it is not enough that the plaintiff proves exposure to the defendant's product. A plaintiff must show 1) proof of exposure to the manufacturer's product, 2) lack of adequate warning or instruction regarding the dangers of asbestos exposure, and 3) damages produced as a result thereof. *Borel*, 493 F.2d at 1095; *Pittsburgh Corning Corp. v. Thomas*, 668 S.W.2d 876, 878–79 (Tex.App.—Houston [14th Dist.] 1984, no writ). Whether the manufacturer was aware of information regarding the dangers of asbestos use at the time of marketing is immaterial since an asbestos manufacturer is charged with the duty to know the dangers

of asbestos products. *Borel*, 493 F.2d at 1089–90.

■ Keene, as cross-claimant, had the burden of proving by competent evidence 1) that Belford was exposed to asbestos-containing products manufactured by GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries, 2) that such products lacked adequate warnings or instructions regarding the dangers of asbestos exposure, and 3) that Belford was injured as a result thereof.

The evidence in the instant case included testimony by a medical expert. The expert concluded that each and every exposure to these products contributed cumulatively to Belford's asbestos-related disease and that no specific source could be identified as the cause of his injuries. We hold that there is sufficient evidence in the record to establish that Belford was exposed to asbestos-containing products manufactured by Keene, GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries and that Belford was injured as a result of such exposure.

However, proof of exposure to a manufacturer's product and damages produced as a result thereof is not enough to establish a marketing defect case. A lack of adequate warning or instruction regarding the dangers of asbestos exposure must also be shown.

To prove lack of adequate warning or instruction, Belford offered the testimony of Dwight Lord Satterthwaite, a former Keene employee. Satterthwaite testified that Keene's products did not have warnings to alert people of the hazards of asbestos exposure. Belford also testified concerning lack of adequate warnings or instructions. Belford testified that during his forty-year career as a boilermaker, he was exposed to many different brands of asbestos-containing thermal insulation products. Belford specifically testified that he was exposed to dust from products made by Keene's predecessors, Baldwin Hill and Baldwin Ehret Hill.

5. 813 S.W.2d 658, 692 (Tex.App.—Texarkana  1991, writ denied).

At the end of direct examination, Belford testified as follows:

Belford's Counsel: All the years that you worked around these products that we talked about here today, did you ever see a warning sign that told you that asbestos products or those particular products could harm you?

Belford: No.

Belford's Counsel: Did you ever see a warning that said that Baldwin Hill and Baldwin Ehret Hill products, that you should be careful around them?

Belford: No.

Belford's Counsel: Did you ever see any warnings that would tell you that those products, if you breathed them, that they could cause cancer?

Belford: No.

Belford's Counsel: Did you ever see any warnings on those products that told you that if you breathed them, that they could kill you?

Belford: No.

On cross-examination, Keene's attorney asked Belford about his answers to interrogatories which stated that Belford had also been exposed to asbestos-containing products made by other companies. On the issue of failure to warn, Keene's attorney asked the following:

Keene's Counsel: On this job, this is at Bechtel in Pennsylvania, no Baldwin Hill, but Rubroid (sic), correct?

Belford: Let me correct that statement. When I put the product down, it was the product that I may have seen on a box, but that does not mean that that material was used because when the material was taken out of the box, you couldn't tell one from the other.

Keene's Counsel: So you don't know whether any of these products were used on the jobs you were on, you just know the boxes were there?

Belford: The boxes—no. When I seen Pabco, there might have been only two or three boxes of Pabco. But when I seen the other materials, it would be stocked, a semi-trailer would come in with a load of one material.

Keene's Counsel: Did you ever see warnings on any of these products, Pabco?

Belford: No.

Keene's Counsel: Rubroid (sic), Armstrong?

Belford: No.

Belford offered no other evidence that products manufactured by GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries lacked adequate warnings or instructions regarding the dangers of asbestos exposure.

Keene offered the testimony of a former Keene employee, who testified that warning labels were first put on Keene's packages during the last quarter of 1966, and the testimony of a lung disease specialist. Keene offered no other evidence that products manufactured by GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries lacked adequate warnings or instructions regarding the dangers of asbestos exposure.

We find no evidence in the record that products manufactured by GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries, lacked adequate warnings or instructions regarding the dangers of asbestos exposure. The only evidence we find is Belford's testimony that he never *saw* a warning label on products manufactured by GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries.

Adequacy of warning or instruction for safe use generally presents a fact issue for determination by the jury. *Bristol Myers Co. v. Gonzales,* 561 S.W.2d 801 (Tex.1978); *Ford Motor Co. v. Nowak,* 638 S.W.2d 582, 592 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Lopez v. Aro Corp.,* 584 S.W.2d 333, 335 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Bituminous Cas. Corp. v. Black & Decker Mfg. Co.,* 518 S.W.2d 868, 872–873 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.).

After reviewing the entire record, we hold that the jury's findings 1) that a defect exist-

ed in the marketing of the asbestos-containing products at the time they left Keene's possession and 2) that no defect existed in the marketing of the asbestos-containing products at the time they left the possession of GAF/Ruberoid, Owens–Corning Fiberglass/Kaylo, Fibreboard Corporation/Pabco, and Armstrong World Industries, are not against the great weight and preponderance of the evidence. We overrule appellant's sole point of error.

We AFFIRM the judgment of the trial court.