**CRAWFORD OVERHEAD DOOR CO. et al., Appellants,**

v.

**Eddie ADDISON, Appellee.**

**No. 7507.**

Court of Civil Appeals of Texas, Beaumont.

Dec. 27, 1973.

Rienstra, Rienstra & Dowell, Beaumont, for appellants.

Orgain, Bell & Tucker, Daylee Wiggins, Beaumont, for appellee.

DIES, Chief Justice.

In April 1967 an overhead door at Industrial Towel & Uniform Company fell severing plaintiff's left thumb. Plaintiff Eddie Addison brought suit for damages against Eugene Lee Crossland, d/b/a Hollywood-Crawford Door Sales (hereafter called Crossland) and the Crawford Door Company, Inc. (hereafter called Door Company), alleging various acts of negligence on each part.

The overhead door was secured by a wire cable which passed through a bracket and under a wedge. Tension on the cable forced the wedge into a "lip," which was intended to prevent the cable from slipping.

The case was tried to a jury which found that the lip of the bracket on the door was not of sufficient strength by construction to prevent it from releasing the wedge and cable (S.I. No. 2); that this was negligence and a proximate cause of the incident complained of; that Door Company failed to design the bracket with a device which would have prevented the cable from releasing from said bracket (S.I. No. 5); but they failed to find this was negligence (S.I. No. 6). They did, however, find that "such negligence, if any, on the part of the defendant, Crawford Door Company, Inc., to design the bracket with a device which would have prevented the said cable from releasing from said bracket," was a proximate cause of the accident (S.I. No. 7). The jury failed to find that Door Company "failed to design the bracket with a device which would have prevented the said cable from releasing from said bracket . . . rendered said bracket not reasonably fit for the purposes for which it was intended" (S.I. No. 8). They also found that Door Company "distributed the bracket installed on the door in question which did not include some mechanism or apparatus to prevent the end of the cable that passed between the wedge and lip from slipping between these parts"

(S.I. No. 10); that this was negligence and a proximate cause of the incident complained of.

The jury found that Crossland failed to place a larger size Crawford bracket on the overhead door in question the day before the accident (S.I. No. 32), but failed to find that this was negligence.

The jury also found that Door Company failed to warn Crossland "that a door of the type in question required a larger size Crawford bracket" (S.I. No. 36), but failed to find that this was negligence.

The court entered judgment (a) for plaintiff against Door Company; (b) that plaintiff recover nothing from Crossland; (c) that Door Company recover nothing on its cross-action against Crossland. It is from this judgment Door Company has perfected this appeal.

■ Door Company's points of error are briefed in two sections. The first twenty points complain of the findings to S.I. Nos. 2, 3, and 4 (that the lip of the bracket on the door was not of sufficient strength by construction to prevent it from releasing the wedge and cable) as being supported by no evidence or insufficient evidence.

The only evidence to explain the failure involved came from plaintiff's witness, W. B. West, Jr., who qualified as an expert:

"Q All right, sir. What happens if the cable, under a live load, is not attached as you have said, but the free end is left and a wedge is driven, as you have testified, into that bracket; what happens then?

"A In this case the wedge is held by the friction or forces forcing the wedge into a smaller area. Under a steady load this is fine, but under your live load, your moving load, the cable is tight, it occilates [sic] like a guitar string and these movements continue to move the wire to one side of the wedge if there is any side play at all, and if these forces are released for a split second it will slip out.

"Q All right, now look at this bracket, please, and examine in that particular area, please, where the wedge was put in there. Do you see any evidence of slippage?

"A Yes, sir.

"Q Would you be kind enough to show it to the jury, please, sir?

"A The original design, of course, as shown by the damage next to it is that both sides should be curled down and form the same channel for the wedge to fit on it. You see on one side it is deformed and rolled up and opened up the opening. The distance from this side of the cavity is quite critical because we have a wedge that fits inside and the rope must pass through and keep pressing against this wedge and the wedge must stay in position in order for it to maintain its integrity. This bracket was originally built with both sides the same, the left and right, either way. It is important that these retain their dimension because the distance from here to here . . . is quite important because the wedge must fit in here quite tight. If the wedge ever moves then the wire will come out.

*    *    *    *    *    *

"Q The design of the lip and the wedge part to hold the cable, is that a proper design to that particular phase of that bracket?

"A No, sir.

"Q Why not?

"A Even on a dead steady load the efficiency of this type fastener would have been vastly improved had the face of this wedge against which the round cable bears—we have a round cable bearing against a flat edge of a wedge or cam. This could have been formed with a concave surface so that it would tend to center the wire rope across the center of the wedge and prevent it from coming out to the side. This is done on all cable hoists where there is heavy loads on a drum winding up on a cable.

*    *    *    *    *    *

"Q All right, sir. So far as the strength of the bracket, the size of it and so forth, you have no quarrel with that, do you?

"A No, sir.

*    *    *    *    *    *

"Q While a door is hanging with the type cable and wedge and bracket tension on the cable, what is happening to the wedge and to that lip?

"A The tension is fluctuating on the cable and it is the round side of this cable that is bearing against this flat edge of the wedge and is pulling the wedge toward the cable and forcing the sides of the wedge against these retaining lips. If, so long as the cable stays in the center of the working surface of the wedge.

*    *    *    *    *    *

"Q Could anything have been added to the wedge or done to the wedge in order to help secure this cable lip?

"A Yes, sir.

"Q Such as what?

"A Set screws, simple set screws to hold it in position.

"Q Okay, what else?

"A They could have designed the working edge of the wedge to have a concave surface rather than a flat surface so that the round edge would tend to stay centered on the working phase of this wedge.

*    *    *    *    *    *

"Q And, of course, the bending of that side opens up this lip and allows this wedge to slide out of its normal position?

"A   Correct, yes, sir.

"Q   And it is that which permitted the cable to slide on out, that opening up, is that right?

"A   No, sir.

"Q   I thought you said that is where the marks of the sliding of the cable was on that open side?

"A   Yes, sir, it is, but the marks on the inside surface and the cam indicate that the wedge was in its position as the cable lifted."

We have quoted at length from witness West's testimony; for, while it may be argued what he found wrong with the equipment involved, certainly none of his testimony raised the strength sufficiency of the lip of the bracket. In fact, he testified he had no quarrel with its strength or size. Evidently, then, S.I. No. 2 has no support in the evidence and the points of error directed thereto are sustained.

Door Company's points twenty-one through thirty-five complain that there was no evidence or insufficient evidence to support the findings to S.I. Nos. 10, 11, and 12, as previously noted, S.I. No. 10 found that Door Company "distributed the bracket installed on the door in question which did not include some mechanism or apparatus to prevent the end of the cable that passed between the wedge and lip from slipping between these parts." (S.I. Nos. 11 and 12 found negligence and proximate cause.)

Actually since the cable was constantly under tension—or supposed to be—the wedge, around which the cable was laid, was pulled up into the bracket lip. The very purpose of this wedge and lip design was to prevent the cable from slipping loose. However, witness West's testimony does raise the question of the sufficiency of this design.

As noted above, this issue was submitted to the jury (S.I. No. 5) which found that Door Company failed to design the bracket with a device which would have prevented the cable from releasing from the bracket; they failed to find this was negligence (S. I. No. 6), but that such negligence was a proximate cause of the accident (S.I. No. 7).

The Restatement of Torts 2d, § 398, at 336 (1965), reads:

"A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise *reasonable care in the adoption of a safe plan or design.*" (emphasis ours)

In Texas Bitulithic Co. v. Caterpillar Tractor Co., 357 S.W.2d 406, 409 (Tex. Civ.App., Dallas, 1962, error ref., n. r. e.), the court said:

"The law pertaining to the liability of a manufacturer for injuries suffered by third parties not in privity of contract with the manufacturer has undergone great changes over the years. Originally it was held that a manufacturer under such circumstances was not liable for its negligence in the manufacturing and marketing of its product. Later the manufacturer was held liable for its negligence in the manufacture of articles inherently dangerous and destructive, such as poisons, explosives and weapons. Still later liability was extended to include articles not inherently dangerous, but which due to a defect in materials or workmanship, became imminently dangerous when used for the purpose for which they were intended. *And in comparatively recent years liability has been still further extended to include articles which are not defective as to the quality of materials or workmanship, but are so designed that they are dangerous when used for their intended purpose by persons who are not aware of the danger in the design.*" (emphasis ours)

See also Messick v. General Motors Corporation, 460 F.2d 485 (5th Cir. 1972) and 69 Harvard L.Rev. 863 (1956).

Door Company has no points questioning the sufficiency of the evidence to support the jury's finding to S.I. No. 5 (design). A finding of negligence in design (S.I. No. 6) is unnecessary to hold the manufacturer liable. Restatement of Torts 2d, supra.

What we have said concerns the liability of the manufacturer of the product. The liability of sellers of chattels manufactured by third persons is governed by Restatement of Torts 2d, § 399, at 337 (1965).

■ This record reflects no evidence that Crawford manufactured the apparatus involved. It does reflect that Crossland or his brother in Houston were furnished the bracket by Door Company. Door Company has no specific assignment of error of the failure of the proof that Crawford Door Company manufactured or designed the apparatus in question, as assumed in S.I. No. 5. Hence, this is ordinarily waived by Rule 418, Texas Rules of Civil Procedure, Jones v. Hortenstine, 291 S.W. 2d 761 (Tex.Civ.App., Amarillo, 1956, no writ); DeBusk v. Quest, 290 S.W.2d 569 (Tex.Civ.App., Amarillo, 1956, dismissed); Bickler v. Bickler, 403 S.W.2d 354 (Tex.1966); Higginbotham v. O'Keeffe, 340 S.W.2d 350 (Tex.Civ.App., Amarillo, 1960, error ref., n. r. e.); Finley v. Howell, 320 S.W.2d 25 (Tex.Civ.App., Texarkana, 1958, no writ; Cruse v. Daniels, 293 S.W.2d 616 (Tex.Civ.App., Amarillo, 1956, error ref., n. r. e.); Kean v. Cotten, 253 S.W.2d 61 (Tex.Civ.App., Beaumont, 1952, no writ); Dreeben v. Sidor, 254 S.W.2d 908 (Tex.Civ.App., Amarillo, 1952, error ref., n. r. e.).

However, Door Company does have numerous points challenging the sufficiency of the evidence to support the findings that Crawford "distributed" the bracket. In the interest of justice we liberally interpret the rules to treat this as assigning the error we have found. Chancey v. Wilson, 378 S.W.2d 395 (Tex.Civ.App., Amarillo, 1964, no writ); Keystone-Fleming Transport v. City of Tahoka, 315 S.W.2d 656 (Tex.Civ. App., Amarillo, 1958, error ref., n. r. e.); Crawford v. Continental Panhandle Lines, Inc., 278 S.W.2d 566 (Tex.Civ.App., Amar-

illo, 1954, no writ); Gloor v. Richard Gill Company, 272 S.W.2d 920 (Tex.Civ.App., San Antonio, 1954, error ref., n. r. e.); Kamp v. Hargis Bldg. Co., 238 S.W.2d 277 (Tex.Civ.App., Galveston, 1951, error ref., n. r. e.); Lofland v. Jackson, 237 S.W.2d 785 (Tex.Civ.App., Amarillo, 1950, error ref., n. r. e.).

■ On page 29 of appellants' brief as a sub-note appears:

"3. On the other hand, with respect to the wedge and cable, the other component parts of the bracket assembly on the door, there is no evidence either as to who manufactured them or as to who distributed them."

And a point of error should be considered where the ground upon which appellant apparently relied is disclosed in statements and arguments accompanying the point on appeal. We find the evidence insufficient to support the finding that Crawford Door Company manufactured the apparatus involved. Plantation Foods, Inc. v. Railroad Com'n of Texas, 480 S.W.2d 508 (Tex. Civ.App., Austin, 1972, no writ); National Carloading Corp. v. Kitchen Designs, Inc., 471 S.W.2d 90 (Tex.Civ.App., Texarkana, 1971, no writ); Sanders v. Sanders, 469 S.W.2d 313 (Tex.Civ.App., Houston—14th Dist., 1971, dismissed); Johnson v. Karam, 466 S.W.2d 806 (Tex.Civ.App., El Paso, 1971, error ref., n. r. e.); Blackmon & Assoc., Inc. v. Palmer Bldg. Sup. & Spec., Inc., 463 S.W.2d 228 (Tex.Civ.App., Corpus Christi, 1971, error ref., n. r. e.).

That part of the judgment giving plaintiff Eddie Addison recovery from defendant Crawford Door Company, Inc., is reversed and remanded for new trial. Plaintiff did not appeal from the court's judgment refusing recovery against defendant Crossland and defendant Crawford Door Company has assigned no error to that part of the judgment which denies recovery against defendant Crossland (see authorities above cited); so, this portion of the judgment is affirmed.