**James E. ALM, Appellant and Cross-Appellee,**

v.

**ALUMINUM COMPANY OF AMERICA, et al., Appellees and Cross-Appellant.**

**No. C14–82–045–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 3, 1985.

Rehearing Denied March 28, 1985.

W. Douglas Matthews, Schmidt & Matthews, Houston, for appellant and cross-appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

MURPHY, Justice.

This products liability and negligence suit arose on June 3, 1976, when James E. Alm's eye was injured by a bottle cap which blew off a thirty-two ounce glass "7-Up" bottle. The trial court awarded Alm judgment for $163,025 against Aluminum Company of America, (Alcoa). We reverse and remand this cause for new trial, because the evidence is factually insufficient to support the jury findings of negligence and proximate cause against Alcoa.

Alm brought suit against Aluminum Company of America, (the designer and licensor of the closure system), J.F.W. Enterprises, Inc. (the owner of the bottler in question) and Lewis & Coker Supermarkets, Inc. (the retailer which sold the bottle to Alm). Alcoa filed a cross-action against J.F.W. and Lewis & Coker. Alm settled with J.F.W. and Lewis & Coker prior to trial. The jury found that Alcoa and J.F.W. were negligent, such negligence was the proximate cause of Alm's injury, and that Alcoa's negligence was 55 percent and J.F.W.'s negligence was 45 percent. The jury's answers to special issues relating to Alm's products liability action were disregarded by the trial court. No error was assigned on appeal concerning this action. Thus, the judgment is based upon Alm's negligence cause of action.

Alm purchased the bottle of "7-Up" from Lewis & Coker. Lewis & Coker purchased it from J.F.W. In turn J.F.W. had purchased the cap from W.H. Hutchinson & Son, Inc. (WHS). W.H.S. had entered into a licensing agreement with Alcoa, authorizing W.H.S. to manufacture resealable aluminum closures under an Alcoa patent. The capping machine used by J.F.W. to apply the cap to the bottle was designed by Alcoa. J.F.W. was authorized by the "7-Up" Company to package and sell "7-Up" products in Houston.

The packaging of the soft drink occurred in an assembly line process at Houston "7-Up" Bottling Company, owned and operated by J.F.W. A typical assembly process involves J.F.W. employees placing empty soft drink bottles onto a conveyor and feeding them into a filler machine which places soft drink syrup and carbonation in the glass bottles. From there the bottles go to the capping machine where an

aluminum cap is placed on the bottles. Top pressure is then applied to the cap and bottle creating a top-side seal. Metal rolling tools contact the side of the cap and push the metal into the channels between the threads of the bottle. This procedure creates a custom seal between the individual cap and the bottle. The final product is then placed in a carton which is then delivered and sold by J.F.W. to Lewis & Coker and others for sale to the general public.

In points of error one through ten Alcoa asserts that the evidence is both legally and factually insufficient to support the jury's finding that Alcoa was negligent and that Alcoa's negligence proximately caused Alm's injury. In considering legal insufficiency points of error the court will consider only the evidence tending to support the finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may be drawn therefrom, and disregarding all conflicting evidence. If upon such review the court finds there is a complete absence of evidence of probative force to support the finding, or only a scintilla of evidence to support it, the point must be sustained. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex. 1981); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In considering factual insufficiency points of error, the court examines the whole record to determine not only that there is some evidence to support the finding, but also to determine whether considering all the evidence, the finding is not manifestly unjust. If it is so weak that the finding is manifestly unjust, the court will sustain the point. *Burnett v. Motyka,* 610 S.W.2d 735 (Tex.1980); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952).

Alm pled and attempted to prove four different negligent acts or omissions by Alcoa. The issue of negligence and proximate cause was broadly submitted. The issue inquired: Do you find that the negligence, if any, of any or all of the following parties proximately caused the occurrence made the basis of this suit: answer "yes"

or "no" beside the name of each party listed:

Alcoa: _____

J.F.W. _____

James E. Alm _____

Thus, it is unknown which acts or omissions the jury determined to be negligent. It is therefore necessary to review the evidence concerning each of the four acts or omissions. The four alleged acts or omissions are that:

(1) Alcoa negligently designed the bottle and cap in that the threads on the bottle to be impressed into the cap were too shallow;

(2) Alcoa negligently designed the cap by including an optional pilfer-proof band on the cap;

(3) Alcoa was negligent in recommending to bottlers a visual inspection system based upon the batch and hold principle of quality control, as opposed to inventing or devising some fail safe system of inspection for use by bottlers;

(4) Alcoa was negligent in failing to adequately warn the bottler (JFW) and/or the plaintiff about the risk that an improperly applied cap could blow-off and cause personal injury.

We first address Alcoa's points of error which assert the evidence is legally insufficient to support the essential elements of Alm's negligence action against Alcoa. Negligence consists of three essential elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damage proximately resulting from that breach. *Colvin v. Red Steel Company,* 682 S.W.2d 243, 28 Tex.Sup.Ct.J. 153 (Dec. 15, 1984); *Abalos v. Oil Development Co.,* 544 S.W.2d 627, 631 (Tex.1976); *Coleman v. Hudson Gas and Oil Corp.,* 455 S.W.2d 701, 702 (Tex.1970). Moreover, the existence of a legal duty under given circumstances is a question of law for the court. *See Abalos v. Oil Development Co., supra,* at 631; *Jackson v. Associated Developers of Lubbock,* 581 S.W.2d 208, 212 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). The threshold question is

whether Alcoa owed any duty to Alm of which one of the alleged acts or omissions would constitute a breach thereof. Alm asserts Alcoa owed the following duties to him: 1) to design its closure system in a non-negligent way so as to avoid injury to third parties such as plaintiff; and 2) to warn plaintiff and/or J.F.W. of the danger that a misapplied bottle cap could blow off and injure a consumer.

 Alcoa does not contest that it owed plaintiff a duty to design its closure system in a non-negligent way. We affirm the existence of that duty. It has long been held that a manufacturer has a duty to all whom he should expect to use the product to exercise reasonable care in the adoption of a safe plan or design. *Crawford Overhead Door Co. v. Addison*, 504 S.W.2d 587 (Tex.Civ.App.—Beaumont 1973, no writ); *Texas Bitulithic Co. v. Caterpillar Tractor Co.*, 357 S.W.2d 406 (Tex.Civ. App.—Dallas 1962 writ ref'd n.r.e.). Alcoa designed the cap which injured Alm and designed and manufactured the capping machine which applied the cap. However, Alcoa did not manufacture or sell the cap. The question arises whether the duty discussed above applies only to the manufacturer of the product that reaches the consumer. We hold that this duty also extends to designers of the product and its manufacturing process. There is no justification for restricting this duty to the manufacturer of the product that causes the injury. If someone's negligence proximately causes damages, it should be actionable regardless of the source, whether it be the manufacturer of the product, the designer of the product or the designer/manufacturer of the product's manufacturing process. We are not aware of any legal precedent in Texas for this holding, but it is consistent with authority in other states. In three cases, the Massachusetts Supreme Court affirmed the liability of designers of a product which caused injury, but which had no part in the manufacture of the product. They are: *McDonough v. Whalen*, 313 N.E.2d 435 (Mass.1974); *Bernier v. Boston Edison Co.*, 403 N.E.2d 391 (Mass.1980); and *Uloth v. City Tank Corp.*, 384 N.E.2d

1188 (Mass.1978). *See also Fabbrini Foods, Inc. v. United Canning*, 90 Mich. App. 80, 280 N.W.2d 877 (1979).

We reserve for later discussion whether Alcoa owed Alm and/or J.F.W. a duty to warn.

There is some evidence that Alcoa breached its duty to exercise reasonable care in the adoption of a safe design for its closure system. Alm's expert witness, George Greene, testified that under the Alcoa closure system there was no way that the bottler could have feasibly determined whether improperly capped bottles were going out of the plant. He testified that the sampling inspection procedure recommended by Alcoa was inadequate and that an average engineer would have designed into the closure system an inspection system that mechanically inspects the cap on every bottle.

Alcoa asserts that the standard of care applied to them must be determined at the time it was alleged to have been negligent and that this testimony is of no probative value because it was not limited to this time period. Alcoa is mistaken. The record shows that this testimony was properly limited to before June 3, 1976, the date of injury.

We next consider whether there is evidence that Alcoa's failure to provide a 100 percent or fail safe inspection method was the proximate cause of plaintiff's injury. Proximate cause includes two essential elements: (1) foreseeability, and (2) cause in fact. *Missouri Pac. R. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex. 1977); *Farley v. MM Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975); *East Texas Theaters, Inc. v. Rutledge*, 453 S.W.2d 466, 468 (Tex.1970). Both elements must be present, *Missouri Pac. R. Co. v. American Statesman, supra*, 103, and may be established by direct or circumstantial evidence. *Farley v. MM Cattle Co., supra*, 755. Proximate cause cannot be established by mere guess or conjecture, but rather must be proved by evidence of probative force. Foreseeabil-

ity is satisfied by showing that the actor, as a person of ordinary intelligence, should have anticipated the danger to others by his negligent act. *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex. 1970). Cause in fact means that the act or omission was a substantial factor in bringing about the injury and without which no harm would have occurred. *Texas & P. Ry. Co. v. McCleery*, 418 S.W.2d 494, 497 (Tex.1967).

*McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980). George Greene testified that the failure to provide a 100 percent or fail safe inspection method was the cause in fact of plaintiff's injury. There was evidence that Alcoa knew that misapplied caps could blow off and cause serious injuries to consumers. From this the jury could reasonably infer that Alcoa could reasonably foresee that the failure to provide a 100 percent or fail safe inspection would create a danger to consumers.

We hold that there is some evidence that Alcoa breached its duty to Alm to design its closure system with reasonable care and that this breach was the proximate cause of Alm's injury. We overrule Alcoa's points of error relating to legal insufficiency of the evidence.

We now address Alcoa's points of error that assert the evidence is factually insufficient to support Alm's negligence action. The evidence relating to each of the four acts or omissions upon which Alm predicates his action will be discussed separately.

■ We find the evidence of Alcoa's failure to include a 100 percent or fail safe mechanical inspection system with its closure system was a failure to exercise reasonable care in the adoption of a safe design to be factually insufficient for several reasons. First, it is significant that at the time of trial, 1981, a 100 percent or fail safe mechanical inspection method did not exist. This raises some question as to whether such a machine could be successfully built. Second, there is testimony that a visual inspection sampling system was more advantageous than a mechanical inspection method, because visual inspection gives the observer an indication of where to look for the cause of misapplication of the cap. Third, Dr. Robert Block testified that if a bottler followed Alcoa's recommended inspection system of taking samples, a bottler will discover all the weak caps before they are sent out. The basis for this conclusion is that sampling allows the inspector to discover when the machine begins to go out of adjustment because the capping machine is designed so that if it is going out of adjustment, it does so gradually. There is the additional testimony of Mr. George Overturf that the misapplication of a cap by the Alcoa machine will always be repetitive and for a problem of this nature a sampling inspection system is adequate.

George Greene testified contrary to the testimony of Dr. Block and Mr. Overturf. He stated that misapplication of caps could have been intermittent, instead of continuous. In such a case, periodic sampling may not discover a misapplied cap. However, there is substantial testimony that any temporary problem with the thread formation of the cap is not the kind of defect that is going to cause a blow-off. Thus, if Greene's testimony is accepted as true, evidence of proximate cause is still lacking.

■ We next consider whether the evidence is sufficient to support the theory that Alcoa was negligent in designing the thread depth of the bottle into which the cap was impressed. George Greene testified that the threads were not deep enough to facilitate visual inspection to determine the existence of weak threads. We need not determine whether the evidence is sufficient to find that the design of the thread depth was negligent, because Alm did not offer any probative evidence that the thread depth of the bottle was the proximate cause of his injury. George Greene testified that the thread design was a cause of plaintiff's injury, but he gives no factual basis for this conclusion. The evidence overwhelmingly indicates that the cap which injured plaintiff was so badly misapplied that its misapplication is detectable by

visual inspection even in the absence of deeper threads. Thus, deeper threads on the bottle which injured Alm would not have prevented the injury. The evidence is insufficient to establish proximate cause under this theory.

Alm also asserts that Alcoa was negligent in designing the cap with a pilfer-proof band on the cap. George Greene testified that the presence of the pilfer-proof band on the cap allows many caps with weak threads to reach consumers because caps with weak threads without the band would blow off immediately after they are bottled. He concluded that the pilfer-proof band made the bottle unreasonably dangerous to the consumer. However, the decision to include the pilfer-proof band did not ultimately rest with Alcoa. Alcoa designed caps both with and without pilfer-proof features. The choice of design rested with the soft drink companies and their bottlers. Assuming that the evidence is sufficient to show it is negligent to make caps with pilfer-proof bands, such negligence must be accounted to the party which made the ultimate decision to include the bands as part of the cap. Alcoa cannot be held responsible for the design decision of J.F.W.

Alm argues that because Alcoa did not warn bottlers about the dangers of a cap with a pilfer-proof band, J.F.W. did not have sufficient information to evaluate the risk of using a cap with a pilfer-proof band. Therefore, Alcoa should bear the responsibility for the unreasonable design because it chose to offer the pilfer-proof band as a design option without adequately warning J.F.W. of the risks of using a cap with a pilfer-proof band.

We find this argument unpersuasive because there is no evidence indicating that Alcoa was aware or that it was reasonably foreseeable that the presence of a pilfer-proof band would increase the risk that a blow-off would occur in the hands of a consumer. Alcoa had no duty to warn J.F.W. of a risk that at the time of the design decision was unknown and not reasonably foreseeable. Even assuming that

such a risk was reasonably foreseeable, J.F.W. should still bear the responsibility. Alcoa warned J.F.W. in an owner's manual that improper closure applications could result in a blow-off. Thus, Alcoa was in no better position than J.F.W. to anticipate this risk. In these circumstances it was the responsibility of J.F.W. to evaluate the potential risks created by the pilfer-proof band.

Alm's final contention is that the evidence is sufficient to show that Alcoa was negligent in failing to warn J.F.W. and/or Alm about the risk that an improperly applied cap could blow off and cause personal injury. We must first decide whether Alcoa owed a duty to warn.

Alcoa was the designer/manufacturer of the capping machine which misapplied the cap that injured plaintiff. In *Crocker v. Winthrop Lab., Div. of Sterling Drug, Inc.*, 514 S.W.2d 429, 433 (Tex. Cr.App.1974) the court stated:

If the manufacturer knows or should know of potential harm to a user because of the nature of its product, the manufacturer must give an adequate warning.

Alcoa knew that the nature of the capping machine was that through use it would become out of adjustment thereby causing the misapplication of caps. Therefore Alcoa owed a duty to give an adequate warning to the bottler, J.F.W.

Alcoa contends that it did not create the risk of misapplied caps and therefore has no duty to warn. Alcoa relies on *Cactus Drilling Co. v. Williams*, 525 S.W.2d 902, 911 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.), which held that one who did not create a dangerous situation has no duty to warn another of the danger. Alcoa's position is that J.F.W. is solely responsible for creating the risk by its failure to properly maintain the capping machines. We consider this argument to be similar to a misuse defense which is common to product liability actions. It is essentially the argument that J.F.W. misused the machines by failing to properly maintain them. Alcoa cannot rely on this defense because it was aware of this possi-

bility. If misuse of a product by a user is foreseeable by the manufacturer, then such misuse is no defense to an action based on the failure to warn of the risk created by the misuse. *Bituminous Casualty Corp. v. Black & Decker Manufacturing Co.,* 518 S.W.2d 868, 876 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.); *Bailey v. Boatland of Houston, Inc.,* 585 S.W.2d 805 (Tex.Civ. App.—Houston [1st Dist.], aff'd on other grounds, 609 S.W.2d 743 (Tex.1980).

We also believe that Alcoa had a non-negligent part in creating the risk of misapplied caps in that it created the potential for misapplied caps by designing and manufacturing a machine which through use becomes out of adjustment.

Alcoa further contends that it had no duty to warn because it did not manufacture the bottle, cap, or content of the product which injured Alm. One need not manufacture the product which causes injury for a duty to warn to arise. Alcoa's duty to warn arises because it designed and manufactured the capping machine which created the risk of misapplied caps, and was therefore a part of the manufacturing process of a potentially dangerous product. As stated earlier, a legal duty of care (including the duty to warn) extends to the manufacturer/designer of the product and to the designer/manufacturer of the manufacturing process of the product.

Alcoa's duty to give adequate warning, however, did not extend to Alm. Alcoa's duty to warn ended with J.F.W., which then had the duty to communicate the warning to consumers. This is because Alcoa had no control over the labeling of the soft drinks. The bottler is the one possessing the adequate means to pass warnings on to consumers. A manufacturer is not liable for miscarriages in the communication process that are not attributable to his failure to give adequate warning. This may occur where an intermediate party is notified of the danger, or discovers it himself, and proceeds to deliberately ignore it and pass the product on without a warning. *Borel v. Fiberboard Paper Products Corp.,* 493 F.2d 1076, 1091

(5th Cir.1973); *see Jones v. Hittle Service, Inc.,* 549 P.2d 1383, 1394 (Kansas 1976).

We must determine whether there is sufficient evidence that Alcoa breached its duty to give adequate warning to J.F.W. The evidence shows that Alcoa supplied J.F.W. a 1970 owner's manual before Alm was injured with the warning:

Leakage or closure blow-off at lower pressures can occur when the closure application is improper . . .

Alm contends that this warning is inadequate because it does not contain the information that closure blow-off can result in serious personal injury. The question of the sufficiency of a warning is a question of fact to be determined by the trier of the facts. *Muncy v. Magnolia Chemical Co.,* 437 S.W.2d 15, 20 (Tex.Civ.App.—Amarillo 1968, writ ref'd n.r.e.); *Bituminous Casualty Corp. v. Black & Decker Manufacturing Co.,* 518 S.W.2d 868, 873–74 (Tex.Civ. App.—Dallas 1974, writ ref'd n.r.e.). Because the issue of negligence was broadly submitted, there is no explicit jury finding that the warning was inadequate. However, there is an implied jury finding that the warning was adequate. The jury found J.F.W.'s negligence was a proximate cause of Alm's injury. Because foreseeability is an element of proximate cause, such a finding includes a finding that J.F.W. knew that its negligence could foreseeably result in Alm's injury. The jury impliedly found that J.F.W. knew or should have known, because of the warning given by Alcoa, that a misapplied cap could result in personal injury. We therefore hold that the evidence is insufficient to show that Alcoa breached its duty to adequately warn J.F.W.

Having found that the evidence is factually insufficient to establish negligence and proximate cause under any theory, we reverse the judgment of the trial court and remand this cause for new trial. Our remand of this cause makes it unnecessary to review numerous other points of error raised by Alcoa and Alm.

## ON MOTION FOR REHEARING

Appellant has raised issues in his motion for rehearing which require clarification and correction of the Court's opinion filed January 3, 1985.

In discussing whether Alcoa owed a duty to warn Alm, the opinion states, "The bottler is the one possessing the adequate means to pass warnings on to consumers." Alm contends that this statement is factually incorrect because the evidence shows that 7-Up, the parent soft drink corporation, has control over the beverage labels and not the bottler. Alm argues that Alcoa therefore owed a duty to warn 7-Up and that the evidence shows that Alcoa did not warn 7-Up.

Assuming that 7-Up controlled the labeling, we first point out that Alm as the plaintiff had the burden to prove that Alcoa breached its duty to warn 7-Up. The only evidence presented by Alm on this issue is the testimony of George Greene that as far as he knew, Alcoa had never given the warning to 7-Up. This testimony is of no value on this issue because Mr. Greene was not an employee or representative of either Alcoa or 7-Up and there was no evidence he was in a position to know what warnings Alcoa had given or not given 7-Up. Alm failed to carry his burden of proof on this issue.

Second, J.F.W. was licensed by 7-Up to package and sell its product. J.F.W. had the physical means to place a warning on the bottles. After J.F.W. received warning from Alcoa, it was incumbent on it as the licensee of 7-Up to communicate the warning to its parent company and attempt to obtain authorization to include the warning in the labeling. We hold that whatever duty Alcoa owed to warn 7-Up, it fulfilled by its warning to J.F.W.

Alm asserts that the court erred in holding that there is an implied jury finding that the warning to J.F.W. was adequate because this finding is contrary to the judgment of the trial court that Alcoa is liable. Alm cites *Lunsford v. Sage, Inc. of Dallas*, 438 S.W.2d 615, 618 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.) and *Life Insurance Co. of Southwest v. Nims*, 512 S.W.2d 712, 717 (Tex.Civ.App.—San Antonio 1974, no writ) for the proposition that implied findings are only presumed in support of the judgment and not to defeat it.

First, the implied finding is necessary to and in support of the portion of the judgment holding J.F.W. liable. A finding that the warning was adequate is logically essential to the jury's conclusion that the negligence of J.F.W. proximately caused Alm's injury.

Second, the cases cited above by Alm apply Rule 279 of the Texas Rules of Civil Procedure which states that when issues are omitted to the jury, and there is no written finding made by the trial court on the omitted issues, then such omitted issues shall be deemed to be found by the court in support of the judgment. Rule 279 refers to implied findings by the trial court, and not to implied jury findings. Therefore, this court's implying of a jury finding from an express jury finding is not covered by Rule 279 and the cases applying it.

Appellant's Motion for Rehearing is overruled.

JUNELL, Justice, dissenting.

After considering Alm's motion for rehearing, I have become convinced that (1) this court was wrong in holding the evidence is factually insufficient to support the jury findings of negligence and proximate cause against Alcoa and (2) Alm's judgment against Alcoa should be affirmed.

In this court's opinion of January 3, 1985, we held that Alcoa had a duty to give an adequate warning but that such duty did not extend to Alm. We said Alcoa's duty to warn ended with J.F.W. and that J.F.W. then had the duty to communicate the warning to consumers such as Alm. Reasons given for that holding were: (1) Alcoa had no control over the labelling of the soft drinks and (2) the bottler is the one pos-

sessing adequate means to pass warnings on to consumers. However, as Alm points out in his motion for rehearing, there is evidence in the record that Alcoa could have effectuated a warning because of its control over the patents involved in the closure system and its licensing arrangements which were required for the system to be used. Alcoa could have required a warning to be placed on the beverage container. Alm also contends in his motion for rehearing that our statement that the bottler is the one possessing adequate means to pass warnings on to consumers is irrelevant in light of Alcoa's ability to warn and is factually incorrect because the undisputed evidence shows that the parent soft drink corporation, not the bottler, controls the beverage labels. I must agree with Alm concerning these contentions. This leads me to conclude that Alcoa's duty to warn extended to Alm and that the evidence is factually sufficient to support a jury finding that Alcoa was negligent in failing to warn Alm and such negligence was a proximate cause of the occurrence made the basis of Alm's suit. The presence of an intermediate party, the bottler, will not by itself relieve the seller of the duty to warn Alm. *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1091 (5th Cir.1973).

I am also now convinced that there was a fact issue for the jury on the question of whether Alcoa negligently failed to give an adequate warning to J.F.W. and that we were wrong in holding there was an implied jury finding that the warning was adequate. The jury finding that J.F.W. was negligent and its negligence was a proximate cause of Alm's injuries do not necessarily imply a finding that Alcoa gave J.F.W. an adequate warning of the danger. Under the evidence in this case and the broad form of the special issue on negligence, I believe the jury finding of negligence on the part of Alcoa includes a finding that Alcoa's negligence was in its failure to give an adequate warning to J.F.W.. On such issue, I think the evidence is sufficient to support such finding. Furthermore, I do not believe that the jury finding

of negligence on the part of J.F.W. is necessarily predicated on an implied finding that Alcoa gave an adequate warning to J.F.W.

For the reasons stated, I disagree with the result reached by the majority, with the majority's opinion of January 3, 1985, and the majority's opinion on motion for rehearing. Therefore, I respectfully note my dissent.