ALUMINUM COMPANY OF
AMERICA, Petitioner,

v.

James E. ALM, Respondent.

No. C–7889.

Supreme Court of Texas.

Jan. 31, 1990.

Rehearing Overruled April 4, 1990.

Michael Connelly, Robert M. Roach, Jr., Houston, for petitioner.

W. Douglas Matthews, Timothy F. Lee, Houston, for respondent.

## OPINION

MAUZY, Justice.

This personal injury case arose when, in 1976, a threaded, twist-type bottle cap blew off a Seven–Up soft drink bottle and struck James Alm in the eye, severely injuring him. Alm brought suit against the Aluminum Company of America (Alcoa), JFW Enterprises, Inc., and Lewis & Coker Supermarket.[1] At the close of trial, the jury found that Alcoa was grossly negligent and that its negligence was a proximate cause of Alm's injuries. The trial court rendered judgment on the verdict in favor of Alm for his actual damages but disregarded the jury's answers on gross negligence and therefore refused to award the exemplary damages. The court of appeals then reversed and remanded the cause to the trial court, holding that the evidence of Alcoa's negligence was factually insufficient and that Alcoa had no duty to warn Alm of possible bottle cap blow-off. 687 S.W.2d 374.

In our first consideration of this cause, we held that Alcoa's role as a designer and manufacturer of the processing equipment gave rise to a duty to warn the ultimate consumer about the possibility of cap blow-off, which duty could be satisfied by proving that Alcoa's intermediary, JFW, "was adequately trained and warned, familiar with the propensities of the product, and capable of passing on a warning." 717 S.W.2d 588, 592 (*Alm I*). We remanded the cause to the court of appeals for consideration of Alcoa's factual insufficiency point regarding the inadequacy of its warning to JFW. Additionally, we reinstated the jury's finding of gross negligence and remanded to the court of appeals for its consideration of any points raised by Alcoa concerning that issue.

On remand, the court of appeals held that the jury's finding on the inadequacy of Alcoa's warning to JFW was based on factually sufficient evidence. It further determined, however, that the evidence was factually insufficient to support the jury's finding on gross negligence and remanded

the issue of gross negligence to the trial court. 753 S.W.2d 478. We now reverse.

### I

Two issues are presented: (1) whether the court of appeals erred by remanding the gross negligence issue, and (2) whether the court of appeals erred by not remanding the ordinary negligence issue.

■ Alcoa makes two arguments in support of its contention that the court of appeals erred by not remanding the entire cause to the trial court. Alcoa asserts first that it was not given an opportunity to introduce evidence of its warning to the Seven–Up Corporation in light of the "new" legal duty placed on it by this court in *Alm I*. Alcoa argues second that the issue of ordinary negligence must be remanded because the court of appeals refused to review the evidence of its warning to Seven–Up.

To put Alcoa's arguments in the proper perspective, it is necessary to understand the relationship of the entities involved. The undisputed evidence shows that during the 1960's, Alcoa designed, patented, manufactured, and marketed a closure system for applying aluminum caps to carbonated soft drink bottles. The closure system included a capping machine which applied threaded, pilfer-proof caps. Under a franchise agreement, Seven–Up licensed JFW to bottle its product. In 1969 Alcoa sold such a capping machine to JFW for use by Houston 7–Up Bottling Company, an unincorporated division of JFW. JFW purchased the aluminum capping material from W.H. Hutchinson & Son, Inc., which manufactured the pilfer-proof caps under licensing agreements with Alcoa. JFW sold the bottled soft drink to Lewis & Coker Supermarket, which sold a bottle to Alm.

As noted above, we held in *Alm I* that Alcoa had a duty to warn the ultimate consumer, Alm, but that Alcoa could satisfy this duty by proving that its intermediary, JFW, was adequately trained and warned, familiar with the propensities of the product, and capable of passing on a

---

1. Alm settled with Lewis & Coker and JFW before trial.

warning to the ultimate consumer. Alcoa contends that because of this "new" duty it was prevented from offering evidence to the jury on this issue.

Assuming *arguendo* that our holding in *Alm I* did place a new duty on Alcoa, its claim that it was not allowed to introduce evidence of its warnings to Seven–Up is not supported by the record. At trial, Alcoa offered evidence of training sessions it gave to Seven–Up on the proper application of the aluminum caps and the danger of cap blow-off. The evidence consisted of office correspondence between Alcoa and representatives of Seven–Up which contained references to slide show presentations and training seminars on the proper operation of the Alcoa closure system. Alm objected to the admission of the evidence, arguing it was irrelevant. Alcoa argued, however, that because Alm sought exemplary damages, the evidence was material for the purpose of showing the efforts it made to provide information and training on the proper use of its closure system.

The trial court sustained Alm's objection to the general offer but allowed the admission of the evidence as a limited offer. *See* Tex.R.Civ.P. 105. However, since Alm did not request a limiting instruction, admission of the evidence was, for all practical purposes, a general offer. *See* Tex.R. Civ.P. 105(a); *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 365 (Tex. 1987); *Scotchcraft Bldg. Materials, Inc. v. Parker*, 618 S.W.2d 835, 837 (Tex.Civ.App. —Houston [1st Dist.] 1981, writ ref'd n.r. e.). Therefore, the jury was afforded the opportunity to consider the evidence of Alcoa's warnings to Seven–Up in its deliberation on ordinary negligence.

## II

■ Alcoa's second argument is that the court of appeals erred by not considering the evidence of its warning to Seven–Up in connection with the ordinary negligence issue.

The question is thus posed whether Seven–Up was an appropriate intermediary through which Alcoa could have fulfilled its duty to warn the ultimate consumer. We noted in *Alm I* that a manufacturer, as well as a supplier, of a product has a duty to inform users of hazards associated with the use of its products. The Restatement (2d) of Torts § 388 [2] describes the manufacturer's duty to warn the ultimate user of its product, while comment n to § 388 states that this duty may be discharged by an adequate warning to the intermediary through whom the chattel is supplied. The pertinent part of comment n reads:

> In all such cases the question may arise as to whether the person supplying the chattel is exercising that reasonable care, which he owes to those who are to use it, by informing *the third person through whom the chattel is supplied* of its actual character.
>
> Giving to the third person through whom the chattel is supplied all information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it.

Restatement (2d) of Torts § 388 comment n (1965) (emphasis added).

Alcoa designed, patented, manufactured and marketed the closure system which it sold to JFW. JFW purchased the capping machine directly from Alcoa and the cap-

---

2. Restatement (2d) of Torts § 388 (1965) reads: One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

ping materials from a company manufacturing them under an Alcoa license. Seven–Up was never in the chain of distribution and merely licensed JFW to bottle its product. At no time did Seven–Up exercise control over the instrumentality which caused the injury, i.e., the closure system.

Given these circumstances, Seven–Up could not be "the third person through whom the chattel is supplied" within the meaning of comment n. We conclude, therefore, that Seven–Up was not, as a matter of law, an appropriate intermediary through which Alcoa could have discharged its duty to warn the ultimate consumer, Alm.

### III

■ We turn our attention finally to the issue of gross negligence. He argues the evidence shows conclusively that Alcoa was consciously indifferent about the possibility of bottle cap blow-off. We agree.

■ Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the right or welfare of the person or persons to be affected by it. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981).

> What lifts *ordinary* negligence into *gross* negligence justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care. Such conduct can be active or passive in nature.

*Id.* at 922 (emphasis in original).

Alcoa's own witnesses testified that it had actual knowledge about the danger of serious injury resulting from "weak threads" produced by bottlers using the Alcoa closure system as early as 1967, when the first suit was filed against Alcoa for a personal injury which had resulted

from cap blow-off. Alcoa's witnesses also testified that by 1975, thirty-four such lawsuits had been filed against Alcoa. However, as this Court noted in *Alm I,*

> [t]he record shows that the only "warning" given JFW of the hazards associated with bottle cap blow off came in an Alcoa owner's manual distributed [in 1970] with its capping machine. The statement in that manual read: "Leakage or closure blow off at lower pressures can occur when the closure application is improper or the glassware is not within specification." The statement did not warn that serious personal injuries could result from cap blow off. The language was not designated as a warning, and it was not set off in type different from that used throughout the manual.

717 S.W.2d at 593. The undisputed evidence shows that at the time of Alm's injury in 1976, Alcoa was acutely aware of the danger of cap blow-off, but there is no evidence that it did anything to warn JFW or the purchasers of JFW's products about the very real nature of this danger. In short, there is no evidence in the record to negate the jury's finding of gross negligence. We hold, therefore, that the court of appeals erred in remanding the gross negligence issue.

Accordingly, the judgment of the court of appeals is reversed and the judgment of the trial court modified so as to reinstate the exemplary damages awarded in the jury's verdict and, as modified, is affirmed.

GONZALEZ, J., files a dissenting opinion in which PHILLIPS, C.J., and COOK and HECHT, JJ., join.

GONZALEZ, Justice, dissenting.

I am astounded that the court has concluded as a matter of law that Seven–Up was not an appropriate intermediary through which Alcoa could have discharged its duty to warn ultimate consumers. I am absolutely flabbergasted that the court has effectively held that under these facts Alcoa was *grossly negligent* as a matter of law. To the best of my knowledge, this is the first time in the history of American

jurisprudence that a court has held that a jury *could not disbelieve* a plaintiff's case as to gross negligence when the issue is disputed, and that a court should determine this issue as a matter of law. The possible consequences of this unprecedented holding boggle the mind. I would remand this cause (*"Alm II"*) to the trial court for a new trial on the issues of both negligence and gross negligence.

### Facts

James Alm suffered a severe eye injury when an aluminum bottle cap exploded off of a Seven–Up bottle. Alm had purchased the bottle from a Lewis & Coker supermarket, which in turn had purchased the soft drink from a bottler, JFW Enterprises. Aluminum Company of America ("Alcoa") designed and manufactured the equipment that was used to cap the carbonated soft drink bottle. JFW bottled the beverage for Seven–Up under a franchise agreement. Under its trademark rights and franchise agreement, *Seven–Up controlled the labeling and any cautionary language on the bottle and cap.* Alcoa had absolutely no control over the contents of the bottle or any aspect of the soft drink package which reached Alm.

Alm sued Lewis & Coker, JFW, and Alcoa under theories of strict liability, breach of warranty, and negligence. He settled with Lewis & Coker and JFW and entered into a Mary Carter agreement with JFW. The case proceeded to trial on Alm's allegations that Alcoa was liable because it did not warn Alm of the dangers of explosive cap separation. Alm asserted at trial and on appeal that Seven–Up controlled the warning labels and that Alcoa could not satisfy its duty to warn the ultimate consumers by warning JFW because Alcoa had a duty to warn Seven–Up. Yet, when Alcoa presented evidence of this warning to Seven–Up, Alm objected that this testimony was irrelevant and self-serving. The

trial court sustained the objection, but the evidence was admitted for other purposes.

The jury found against Alcoa on all submitted liability issues. The trial court disregarded the answers to special issues on strict liability, stating that strict liability did not apply to Alcoa. The court of appeals reversed the judgment, holding that the evidence of negligence was factually insufficient and that Alcoa had no duty to warn consumers. 687 S.W.2d 374. Alm brought forward only the negligence portion of the case for appeal.

### Alm I

In *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 591–92 (Tex.1986) (*"Alm I"*), we held that Alcoa had a duty to warn the ultimate consumer of the dangers associated with bottle caps manufactured with a closure system which it designed, built, and sold. We further held that this duty to warn could be discharged by warning an intermediate user of the closure system if there were reasonable assurances that the warning would reach the ultimate consumer.[1] *Id.* The court today seeks to avoid remanding the negligence portion of this case by asserting that Seven–Up "was not, as a matter of law, an appropriate intermediary through which Alcoa could have discharged its duty to warn the ultimate consumer." *Alm II,* at 140. Arguably, under these facts, Seven–Up was a proper intermediary to warn, given our decision in *Alm I.*

Furthermore, we did not hold in *Alm I,* as the court today deceptively and erroneously maintains, that Alcoa's duty to warn the ultimate consumer could be satisfied by proof that "Alcoa's intermediary, *JFW,* 'was adequately trained and warned.'" *Alm II,* at 138 (emphasis added). Instead, we held that Alcoa could satisfy its duty to warn by proving "that *its* intermediary was adequately trained and warned." *Alm I,*

---

1. As Alcoa did not manufacture the injury-causing instrumentality—the bottle cap—the duty to warn that we imposed upon Alcoa was unprecedented. Prior to *Alm I,* there had never been a Texas case in which a duty to warn was imposed on a manufacturer that did not produce the injury-causing instrumentality. Thus, in *Alm I,* we announced a new rule for the juris-

prudence of this state governing tort liability. *See also Costilla v. Aluminum Co. of America,* 826 F.2d 1444, 1448 (5th Cir.1987), *vacated in part and remanded,* 835 F.2d 578 (1988); Note, *Alm v. Aluminum Co. of America: An Extension of Duty to Warn,* 39 Baylor L.Rev. 339, 344–47 (1987).

717 S.W.2d at 592 (emphasis added). We never mentioned JFW by name, nor does anything in the opinion suggest that it was the only appropriate intermediary. The court today in *Alm II* rewrites our opinion in *Alm I* to reach its desired result.

Under its franchise agreement with JFW, Seven–Up controlled the labeling on both the bottle and its cap. Accordingly, Seven–Up arguably was in the best position to warn the ultimate consumer of the danger of a bottle cap explosion. As such, Seven–Up should not be ruled out as a proper intermediary through which Alcoa could discharge its duty to warn. In fact, the passage from comment n to the Restatement (Second) of Torts § 388 (1965) cited by the court supports the conclusion that Seven–Up should not be excluded as a proper intermediary:

> In all such cases the question may arise as to whether the person supplying the chattel is exercising that reasonable care, which he owes to those who are to use it, by informing the third person through whom the chattel is supplied of its actual character.
>
> Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. *The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it.*

(Emphasis added.) The purpose of the rule announced in *Alm I* is to insure that the ultimate consumer receive any warnings necessary to make the product in question safe, while recognizing the inherent difficulty of transmitting such warnings when the manufacturer is not in the direct chain of production.

### Negligence

In the instant case, Alcoa could logically argue that an appropriate method of supplying the requisite information with reasonable assurance that it would reach the ultimate consumer was by communicating it to Seven–Up, which had control over the labeling of the bottle caps and bottles. The injury causing instrumentality was the bottle cap—not the closure system. The mere fact that JFW had control over the closure system did not give it the ability to transmit any warnings to Alm. The court's reliance on the phrase "through whom the chattel is supplied" in comment n to the Restatement (Second) of Torts § 388 is misplaced in light of the language of the comment as a whole, as well as common sense.

At the trial of *Alm I*, Alcoa, unaware of our impending change of the law, did not obtain an instruction informing the jury that Alcoa's duty to Alm could have been satisfied or discharged through a warning given to an intermediary. In light of the change in the law, an instruction of this nature should be given in order to insure a fair trial. *See Costilla v. Aluminum Co. of America*, 835 F.2d 578, 580 (5th Cir. 1988) (holding that adoption of new rule in *Alm I* necessitated a remand for new trial). In the interest of justice, I would remand the negligence portion of this case for a new trial under the law as changed by *Alm I. See L.M.B. Corp. v. Gurecky*, 501 S.W.2d 300, 303 (Tex.1973) (remanding the cause to the trial court for a new trial in the interest of justice following a change in the law).

### Gross Negligence

Furthermore, the gross negligence issue should be remanded for a new trial as well. The court of appeals made a determination that is constitutionally binding on this court by finding the evidence factually insufficient to support gross negligence. Tex.Const.Ann. art. V, § 6 (as amended in 1891); *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). To circumvent the court of appeals decision, the court has taken the unprecedented step of finding gross negligence as a matter of law, thus denying Alcoa the right to a trial by jury on this the most basic of fact questions. As this court judiciously held in *Burk Royalty Co. v. Walls*, the leading case on gross negligence:

> What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the

penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

616 S.W.2d 911, 920 (Tex.1981) (emphasis in original); *see also Williams v. Steves Industries, Inc.,* 699 S.W.2d 570, 573 (Tex. 1985) (conscious indifference denotes a decision to not care about the consequences of an act which may ultimately lead to harm).

After today, the court, not the jury, is empowered to determine, on the basis of plaintiff's proof alone, whether the defendant's mental attitude is sufficiently "bad" to justify punitive as well as actual damages. In *any* case short of a confessed judgment, such a holding would be profoundly disturbing. But in this case, where there clearly is some evidence that Alcoa attempted to warn of the dangerous propensities of the closure system, a holding of an entire want of care as a matter of law is an absolute travesty. Alcoa had a program for bottlers meant to demonstrate the hazards associated with misapplied caps and cap blowoff which included wall charts, slide shows, and other information from technical personnel. How can it be said that Alcoa "didn't care" as a matter of law in the face of such evidence?

Henceforth, whenever five members of this court are displeased with a particular result, they can impose any result they desire, merely by holding that a party proved the necessary facts conclusively, i.e., as a matter of law. This result runs roughshod over the constitutional limitations on our jurisdiction and our concept of fairness to all parties.

For these reasons, I dissent.

PHILLIPS, C.J., and COOK and HECHT, JJ., join this opinion.